# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

Sandra Montoya, on Behalf of her Minor Child,
S.M., Rebecca Archuleta, on behalf of her
Minor Child, E.S., Bernadette Gallegos on behalf of
her Minor Child R.P., Charlene Guinn, on behalf
of her Minor Child S.V., Andrea Serna on behalf of
her Minor Child C.G., Jerry and Michelle Trujillo
on behalf of their Minor Child, G.T., Elizabeth McCall-Guinn on
behalf of her Minor Child, S.M.G., and, Rosa Contreras, on
behalf of her Minor Children, M.P., and E.P.,
all others similarly situated,

        Plaintiffs,

   vs.                                                            No.10-cv--651 WPJ/LFG

Española Public School District Board of Education,
Española School Board Members Joann V. Salazar,
Floyd Archuleta, Andrew J. Chavez, Leonard J. Valerio,
and Jose I. Archuleta, in their individual capacities;
Superintendent Dr. David Crockerham, in his individual and official capacity;
Superintendent Janette Archuleta, Associate Superintendent
Dorothy Sanchez, Española Valley High School Principal
Bruce Hopmeier, Española Valley High School Assistant
Principal Devanna Ortega, Española Valley High School
Assistant Principal Dolores Guzman, Carlos Vigil Middle
School Principal Ben Gurule, Carlos Vigil Middle School
Seventh Grade Principal Lewis Johnson, Carlos Vigil Middle
School Assistant Principal Dennis Gallegos, in their individual capacities;
City of Española Police Officers Brian Martinez and Danny Pacheco,
in their individual capacities; Elias Coriz and Cheryl Montoya,
individually and as owners of Big Ross, Inc. d/b/a ProSec Services;
Big Ross Security Guards Geraldine Martinez, Jason Archuleta,
Marty Valero, John Does 1-6; and,
all similarly situated Big Ross Security Guards,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING SCHOOLDEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT FILED BY PLAINTIFF E.P**.

THIS MATTER comes before the Court upon a Motion to Dismiss Amended Complaint Regarding the Claims Filed by Plaintiff E.P., filed by the School Defendants on November 19, 2010 (**Doc. 25**).[1] Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken and shall be granted.

## Background

E.P. is one of nine student-plaintiffs who were enrolled at either Española Valley High School or Carlos Vigil Middle School in northern-central New Mexico. The Complaint brought by the students' parents alleges negligence, third-party beneficiary claims of breach of contract and breach of implied contract, and violations of various rights under the New Mexico and U.S. Constitutions. Plaintiffs allege that the school administration is apathetic about school safety, and that the Defendants have created a dangerous environment for its students and that they have taken little or no action to prevent attacks on students by other students. They also allege that Big Ross Security has profited economically by providing security officers who lack training and experience and engage in behavior that endangers students, faculty and staff. The Amended Complaint (Doc. 5) asserts violations of the New Mexico and United States Constitutions, federal statutory law and state common law. Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and also seek to certify this action as a class action pursuant to Fed.R.Civ.P. 23(b)(2).

**I.     Factual Allegations Relevant to E.P.**

The instant motion concerns only the claims of E.P., who is one of the nine student-

---

[1] The "School Defendants" are: Defendants Española Public School District Board of Education, Joann V. Salazar, Floyd Archuleta, Andrew J. Chavez, Leonard J. Valerio, Jose I. Archuleta Janette Archuleta, Dorothy Sanchez, Bruce Hopmeier, Devanna Ortega, Dolores Guzman and Ben Gurule, Lewis Johnson, Dennis Gallegos and Dr. David Cockerham.

plaintiffs in this case. The factual allegations concerning E.P. are contained in the Amended Complaint at ¶¶ 516 to 556, and are as follows.

E.P., the son of Rosa Contreras, is a fourteen year old boy and a student at Carlos Vigil Middle School. E.P. asserts that he has personal knowledge that security guards harass the students, promote violence in the school, promote drug use on school grounds, encourage students to break the law and violate school rules, and create a dangerous environment for all students. The Amended Complaint state that Big Ross security guards at E.P.'s school told E.P. which security cameras were broken, which halls were unattended, and where they could hang out undetected during school hours. E.P. has observed students regularly doing drugs at the east wall of Carlos Vigil Middle School, which is located right behind the main office. E.P. has personal knowledge that security guards encourage students to hang out at this location. Defendant security guards have told E.P and other students that they do not bust students doing drugs because they don't want to do the paperwork. E.P. saw Security Guard John Doe-5, who is younger than the other guards (referred to by his nickname, "Bomba") sell drugs to a student.

E.P. alleges that one of the security guards, Marty Valero, verbally "puts down" the students, including E.P., and makes sexual and abusive comments to minor students. Valero allegedly told E.P. and other male students, "You walk like you have something up your ass" and "I like that ass. I'd tap that." Defendant Security Guard Marty Valero has called E.P. and other male students, "Little girl" and "Pussy." E.P. claims that he has witnessed the security guards and teachers leave the school to smoke by the outside, and that he has personal knowledge that school staff does not want the public to know that there are drugs and violence in the school.

## II.     Legal Standard

Defendants premise this motion on Plaintiff E.P.'s lack of standing, which is a threshold

3

issue to be decided by the Court.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96-97, 97 n. 2 (1998) (constitutional standing is necessary to the court's jurisdiction and as a general rule it must be addressed before proceeding to the merits).  The Court notes that Defendants' arguments also lend themselves to an analysis under Fed.R.Proc.12(b)(6) as well as standing.  In such a situation, the distinction is not critical, because statutory standing need not be addressed if the court determines that the plaintiff loses on the merits.  *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006).[2]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content. *See Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. 1955, 1965 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted). When considering and addressing a Rule 12(b)(6) motion, a court must accept as true all factual allegations pleaded

---

[2] Plaintiff also interprets the basis for Defendants' motion as one for dismissal under Rule 12(b)(6).  Doc. 60 at 6.

in the entire complaint, view those allegations in the light most favorable to the plaintiff , and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir.2009).

## Discussion

Ms. Contreras lists the following claims she brings against the School Defendants on behalf of her son E.P.:

- Count II: Breach of Contract and Breach of Implied Contract (Espanola School Board) Third Party Beneficiary Claim;

- Count VI: Violations of Rights Secured by Article II of the NM Constitution, seeking declaratory and injunctive relief;

- Count VII: Violations of Rights Secured by Article II, Section Eighteen of the NM Constitution Substantive Due Process, seeking declaratory and injunctive relief);

- Count VIII- Fourteenth Amendment Procedural Due Process violation;

- Count IX-Fourteenth Amendment Substantive Due Process violation; and

- Count X- Equal Protection violation.

In this motion, Defendants contend that E.P. does not demonstrate an injury in fact for any of his claims, and he lacks Article III standing to bring this action. Thus, because E.P. does not have standing to bring suit, this Court lacks subject matter jurisdiction to hear the Complaint, which should be dismissed. Defendants also contend that E.P. fails to state any municipal or official-capacity liability claims under *Monell v. Dept of Soc. Servs. of City of N. Y.*, 436 U. S. 658 (1978). Defendants assert the defense of qualified immunity.

**I.   Standing for Breach of Contract and Breach of Implied Contract**

Defendants argue for the dismissal of E.P.'s contract-related claims based upon the lack of a waiver of immunity under the New Mexico Tort Claims Act. By Defendants' own

description, the Tort Claims Act is the "exclusive remedy against a governmental entity or public employee for any **tort** for which immunity has been waived. . . ." § 41-4-17(A). The Court agrees with Plaintiffs in that Defendants confuse the waiver of sovereign immunity extended in the Tort Claims Act with the waiver that is found in NMSA § 37-1-23(A). Plaintiff's breach of contract and breach of implied contract claims are not tort claims.  Thus, dismissal of Plaintiff's claims in Count II will depend on whether they remain viable in the face of the waiver of governmental immunity specific to contracts. Defendants' motion to dismiss these claims based on the waiver provisions in the Tort Claims Act is denied on that basis.

Under NMSA 1978 § 37-1-23(A), governmental entities enjoy immunity from actions based on contract, except "actions based on a valid written contract." *Cockrell v. Board of Regents of New Mexico State University*, 132 N.M. 156, 45 P.3d 876 (N.M.,2002).   Defendant first argues that there is no waiver of immunity because there was no written contract between the School Defendants and E.P.  The only contract at issue is the one between the Espanola School Board and Big Ross Security ("Big Ross").  Plaintiff does not dispute that E.P. was not a party to that written contract.  Thus, the question becomes whether the contract between Espanola School Board and Big Ross ("Big Ross contract") can give rise to a breach of contract or implied contract by a student.

There is no indication that § 37-1-23(A) envisions an extension of a waiver of immunity to individuals who may indirectly benefit from a written contract.  Plaintiff urges the Court to follow *Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 731 (1996). However, *Garcia* has no application here because it is limited to the employment context.  It presents the law relating to one of the exceptions to New Mexico's at-will doctrine in recognizing that an implied contract can exist based on certain representations made in an employee handbook.  I

specify that the case's holding is "limited" because in that case – as in any similar case dealing with implied contracts under New Mexico law, the parties to the implied contract are the employer and the employee.[3]  None of these cases suggest that someone who may benefit from the contract, whether directly or indirectly, becomes a party to that contract or may sue on that contract.

Plaintiff attempts to bootstrap the waiver in § 37-1-23(A) into case law which addresses implied contracts in the employment context by suggesting that the student handbook's promise of safety forms an implied contract.  An implied contract exists where a handbook or manual (a) controlled the employer-employee relationship, and if (b) an employee could reasonably expect the employer to conform to the manual. *Garcia v. Middle Rio Grande Conservancy District et al.*, 121 N.M. 728 (1996) (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1322 (10th Cir. 1999) (employer's personnel policies and procedures can form an implied contract).  Apart from the obvious need for a handbook or manual to be grounded in an employment context, the provisions need to be read as guarantees sufficient to give rise to suit under a contract theory. *See Hartbarger v. Paxton Co.*, 115 N.M. 665, 672 (1993) (to create an implied contract, the offer or promise must be sufficiently explicit to give rise to reasonable expectations).  Even if the handbook provisions could be construed as an implied contract in this case, the handbook has no place within the clear limitations of § 37-1-23(A).  Moreover, these handbooks – even if one were to view them as implied contracts (a finding the Court does not make here) – contain policies set forth by the school for the students and are not part of the Big Ross contract.

---

[3] *See, e.g.*, *Whittington v. State Dept. of Public Safety*, 136 N.M. 503 (N.M.App.,2004); *University of New Mexico Police Officer's Ass'n v. University of New Mexico*, 135 N.M. 655 (N.M.App.,2004); *Swinney v. Deming Bd. of Educ.*,117 N.M. 492 (N.M.,1994).

Plaintiff also cites to *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581 (1987). *Valdez* addressed the question of whether the employees of an independent contractor were third-party beneficiaries of the contract between the general contractor and the subcontractor. The court in that case stated that

> [t]he paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries. . . . Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.

105 N.M. at 581. The court in *Valdez* found that the wording of the contract was ambiguous and that therefore a genuine issue of material fact existed as to whether the contract in that case intended to protect the workers of subcontractors in case of injury on the job.

The Amended Complaint refers to provisions in the Big Ross contract in ¶¶ 31-49, but there is nothing in the description of those provisions which suggest that the students were intended beneficiaries. Foreseeability of harm alone to the students as a result of a breach of that contract does not form the basis for beneficiary status, and without evidence of something more as required under existing case law, the Court will not impose third-party beneficiary status on the students regarding the Big Ross contract. Doing so would impermissibly extend the specific waiver of sovereign immunity for written contracts in § 37-1-23(A).

In the end, even if E.P. could be viewed as a direct and intended beneficiary of the Big Ross contract, the Court agrees with Defendants that he has no standing to bring such a claim. The bulk of E.P.'s allegations concern what he observed pertaining to the conduct of the security guards and their actions, or inaction, towards other students. The only "injuries" he allegedly sustained himself were rude remarks made by security guard Marty Valero. This is not an injury-in-fact sufficient to give him standing for Count II of the Amended Complaint.

## II.     Negligence Claims

Defendants move for dismissal of Count IV of the Amended Complaint by Plaintiff E.P., based on E.P.'s failure to identify a specific waiver of sovereign immunity for his claims brought under the Tort Claims Act.  Defendants contend that Plaintiff's allegations do not constitute an injury-in-fact and that E.P. has therefore failed to demonstrate Article III standing.  The Court agrees with this assessment of E.P.'s negligence claims.  The extent of E.P.'s involvement in this lawsuit is that he was the victim of rude remarks by Big Ross security guard, Marty Valero.  E.P. also alleges that Valero verbally "puts down" other students as well, which includes sexual and abusive comments.  E.P.'s personal knowledge and observations regarding the guards' conduct toward other students do not confer standing on E.P. personally.

Plaintiff must implicitly agree with Defendants, because E.P. does not include Count IV in the list of claims being asserted by E.P. against the School Defendants.  E.P. has not established an injury-in-fact for any negligence claims, nor does he identify a waiver of sovereign immunity for any negligence claim he might assert.  Therefore, this Court lacks subject matter jurisdiction to hear Count IV of the Complaint, which shall be dismissed.

## III.    Sovereign Immunity and State Constitutional Claims

Counts VI and VII allege that Defendants violated Plaintiff's rights under several articles of the New Mexico Constitution, including §§ 4, 10, 17 and 18. Am. Compl., ¶¶ 630-638; 639-646.  Defendants contend that these claims against the School Defendants must be dismissed because there is no specific waiver in the Tort Claims Act allowing Plaintiff E.P. to sue these Defendants for violations of the state constitution.

Plaintiff does not offer a response with regard to these claims.  Under the local rules of this Court, failure to serve a timely response in opposition to a motion "constitutes consent to

grant the motion." D.N.M.LR-Civ.7.1(b). However, Plaintiff would not have much of an argument even if he did respond to this issue. As mentioned earlier, the Tort Claims Act is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act. . . ." NMSA 1978, § 41-4-17.  Because the School Defendants are public employees, consent to be sued must be based on a specific provision in the Tort Claims Act. *Begay v. State*, 104 N.M. 483, 487 (N.M.App.,1985) (Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act), *judgment rev'd sub nom. on other grds by Smialek v. Begay*,104 N.M. 375 (1986); *see also Barreras v. State of New Mexico Corrections Dept*., 133 N.M. 313, 319 (N.M.App.,2002) ("[T]the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."). In *Begay*, the court found that there was no express waiver for plaintiff to sue the medical examiner under the Tort Claims Act, and thus the state had not given consent to be sued under the New Mexico State Constitution.  104 N.M. at 488.

E.P. fails to identify a provision in the Tort Claims Act that waives sovereign immunity for his state constitutional claims.  Nor does such a waiver exist.  E.P. alleges that security guard Marty Valero made rude remarks to him, and that certain guards refused to "bust" students for illicit behavior because they did not want to do the required paperwork.  Because there is no injury-in-fact asserted based on these facts, and E.P. has failed to demonstrate Article III standing.  As a result, this Court lacks subject matter jurisdiction to hear Counts VI and VII of the Complaint.  *Cmp. Begay*, 104 N.M. at 487 (plaintiffs' complaint must be dismissed if no specific waiver can be found in the Tort Claims Act).

## IV. Federal Constitutional Claims Under Fourteenth Amendment[4]

Plaintiff has alleged several claims under 42 U.S.C. § 1983, based on violations of his rights under the Fourteenth Amendment: violations of his procedural due process rights (Count VIII); substantive due process violations (Count IX); and equal protection violations (Count X). Defendants contend that E.P. lacks standing to bring suit under any of these theories, and also assert the defense of qualified immunity.[5]

### A. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment ensures that one cannot be deprived of a property right absent due process of law. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir.2000). To prevail on either a procedural or substantive due process claim under 42 U.S.C. § 1983, a plaintiff must first establish "that a defendant's actions deprived plaintiff of a protectible property interest." *Nichols v. Bd. of County Com'rs of County of La Plata, Colo.*, 506 F.3d 962, 969 (10th Cir. 2007). Assuming a plaintiff has first established a property interest protected by the due process clause, the Fourteenth Amendment guarantees procedural due process which consists of, at minimum, "some kind of notice and . . . some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

The Amended Complaint does not mention the existence of a property right, nor does it

---

[4] Plaintiff addresses Defendants' arguments on the three counts in one section, thereby muddying the waters as far as determining Plaintiff's position on any one of these claims. For this reason, the Court will not read into any of Plaintiff's arguments beyond what Plaintiff states in the brief.

[5] Where the Court finds that Plaintiff has not asserted a viable claim, there is no need to address whether the law was clearly established. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand).

11

refer to any process due but denied to Plaintiff. The response brief refers to the responsibility of a local school board to create an appropriate disciplinary process for students and employees. Doc. 60 at 12.  It also states that E.P. "merely seeks a procedure as promised by the anti-bullying statute and security guards. . . ." Doc. 60 at 14.  This generic language has no plausible connection to any claim of injury suffered by E.P. as a result of a denial of due process, and fails the plausibility test under *Iqbal-Twombly*.  *See Twombly*, 127 S.Ct. at 1965 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").

Further, E.P.'s request for a "procedure" does not fit within injunctive relief which can be granted under Fed.R.Civ.P. 65. Under Rule 65, the Court must be able to fashion an order that: states the reasons why it issued; states its terms specifically; and describes in reasonable detail the acts restrained or required. *See* Fed. R. Civ. P. 65(d)(1)(A)-(C).  Unlike some of the other student-Plaintiffs, E.P. has not suffered any injury that might be remedied by injunctive relief. While the Court is by no means minimizing the hurtful effect on E.P. by the guards' rude remarks, the Court also agrees with Defendants that hurt feelings are not grounds for a federal lawsuit. The Amended Complaint offers no facts which gives the Court reason to believe that E.P. "has a reasonable likelihood of mustering factual support for these claims." *See Ridge at Red Hawk, L.L.C. v. Schneider* 493 F.3d 1174, 1177 (10th Cir. 2007).  Accordingly, the Court shall grant Defendants' motion to dismiss E.P. 's procedural due process claims asserted in Count VII.

B.     Substantive Due Process

Defendants argue that E.P. does not sufficiently allege a substantive due process claim, under either a "special relationship" theory, or a "danger-creation" theory.  Plaintiff's response is

essentially non-responsive to any of the arguments raised by Defendants, which leaves the Court to determine whether Defendants' arguments are legally sound – which the Court finds they are.

A "special relationship" doctrine exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual. *Uhlrig*, 64 F.3d at 572; *See DeShaney v. Winnebago Cty Dept. of Soc'l Svs.*, 489 U.S. 189, 199-200 (1989*)*. The "danger creation" theory is applicable if the state "created the danger that harmed the individual." *Uhlrig*, 64 F.d3 at 572, *cited in Liebson v. NM Corrections Dept. et al.,* 73 F.3d 274, 276 (10th Cir. 1996). Under this theory, the state (or state actor) may be culpable for the acts of third parties when the state creates the dangerous situation or leaves the individual more exposed to the danger. *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir.1998). Defendants contend that neither doctrine applies to E.P., and the Court agrees.

The "special relationship" doctrine does not apply here. E.P.'s required attendance at public school does not form the kind of "special relationship" recognized as triggering a constitutional duty to protect students from the private actions of third parties. *See Seamons v. Snow,* 84 F.3d 1226, 1235 (10th Cir. 1996) (compulsory attendance laws for public schools "do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school"). (citing *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir.1992); *DeShaney*, 489 U.S. at 200 ("when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being).

Nor does a "danger-creation" theory apply to E.P.'s claims. A claim brought under the "danger creation" theory must be predicated on "reckless or intentional injury-causing state action which 'shocks the conscience.'" *Seamons*, 84 F.3d at 1236. Under this theory, it is not

enough to show that the state increased the danger of harm from third persons; rather, the § 1983 plaintiff must also show that "the state acted with the requisite degree of culpability in failing to protect the plaintiff," meaning a "degree of outrageousness and magnitude of potential or actual harm that is truly conscience-shocking.'" *Id*." Being a victim of rude remarks by a security guard hired hardly "shocks the conscience" – even assuming there could be the requisite degree of deliberate involvement by the School Defendants.

In Count IX, the Plaintiffs allege generically that "Defendants violated Plaintiffs' right to bodily integrity under the Fourteenth Amendment." Am.Compl., ¶ 655. There are no facts specific to E.P. which would describe a substantive due process claim. In the paragraphs specific to his claims, E.P. alleges that security guard Marty Valero has made rude remarks to him, and that unidentified security guards have refused to "bust" students for illicit behavior because they did not want to do the paperwork. These "facts" do not describe an injury-in-fact required for standing for a substantive due process claim, nor do they support a claim that can withstand dismissal under Rule 12(b)(6).

C.   Equal Protection Claims

Defendants profess confusion over whether Plaintiff is asserting an equal protection claim, or a disparate impact claim. The Court shares Defendants' confusion, since the response does not address Defendants' arguments specifically to the equal protection claim. The Amended Complaint states that

> Defendants violated Plaintiffs' rights to equality of rights based on their sex, female, their ethnicity, Hispanic, because Defendants Española School Board and Big Ross Security's failure to adequately supervise and train security personnel on the rights of Children has a disparate impact on female children of ethnic minorities who are victims of sex and race discrimination.

Am.Compl., ¶ 661. Thus, it would appear that Plaintiff attempts to allege an equal protection

claim. Also, Count X specifically captions that claim as an Equal Protection claim. Whether E.P. has actually asserted such a claim is another question.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. It is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir.1991). In general, Plaintiffs allege violations of the Equal Protection Clause based on their sex (female) and ethnicity (Hispanic). Defendants have correctly identified the appropriate standard for analysis under the Equal Protection Clause, which is that a plaintiff must show that similarly situated persons were treated differently. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) (comparison to others similarly situated "distinguishes the Equal Protection Clause from the Due Process Clause") (citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)).

Viewing the facts favorably to E.P., the Court finds no assertions that state a plausible Equal Protection claim. There is no mention that E.P. claims membership in a protected group; or that E.P. suffered discriminatory conduct (assuming he did belong to a protected group) or that there was a "similarly situated" group who was treated more favorably. Nor is there any way to view the allegations as a basis for a "class of one" claim under the Equal Protection clause. Under that theory, a plaintiff must show that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1212 (10th Cir. 2006) (the requirement that a plaintiff show that similarly situated persons were treated differently "is

especially important" class-of-one cases). E.P. did not suffer any injury which fits this paradigm. Therefore, the School Defendants' motion to dismiss Plaintiff E.P.'s Equal Protection claim in Count X is granted.

D.     Fourth Amendment and First Amendment Claims

The School Defendants move for dismissal of Counts XI, XII and XIII, asserting claims of Fourth Amendment Unlawful Seizure, Fourth Amendment Excessive Force and First Amendment Retaliation, respectively. The Amended Complaint purports to asserts such claims on behalf of all "Plaintiffs," ¶¶ 5, 632-33, 683, but E.P. does not include these claims in the list of claims he is asserting against the School Defendants, nor does he provide any response to Defendants' arguments on those claims. Thus, the Court – as well as Defendants – is confused as to whether Plaintiff E.P. alleges these claims against the School Defendants. Based on the absence of facts in the Amended Complaint to support a claim of unlawful search, unlawful seizure and excessive force, as well as E.P.'s failure to respond to Defendants' arguments on these claims, I find that Defendants are entitled to the dismissal of these claims inasmuch as E.P. intends to assert them.

E.     *Monell* Claims

Defendants contend that E.P. fails to state any claims asserting municipal liability under *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In *Monell*, the United States Supreme Court held that municipalities cannot be held liable under § 1983 on a *respondeat superior* theory; rather, municipalities are subject to Section 1983 liability only for their official policies or customs, the execution of which causes a plaintiff's injuries. *Id.* at 694; *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006). The municipal action must be "the moving force behind the alleged injury. *See Board of County Com'rs of Bryan County, Okl. v.*

16

*Brown*, 520 U.S. 397, 405 (1997). A municipal policy can take the form of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers," whereas a municipal custom includes "persistent and widespread . . . practices of . . . officials." *Monell*, 436 U.S. at 690-91 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). However, only those municipal officials who have "final policymaking authority" may by their actions subject a municipality to Section 1983 liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Though the responsibility for making policy may be delegated to officials whose acts in turn become the acts of the government, the mere exercise of discretion by an official is not sufficient, by itself, to give rise to municipal liability. *Pembaur*, 475 U.S. at 480-83. Only acts which the municipality has officially sanctioned or ordered can therefore generate liability. CG fails to state any *Monell* claims.

The Amended Complaint contains a general section called "Facts Establishing Official Municipal Policy of Creating Danger for Students in Espanola Public Schools." Doc. 5, ¶¶ 27-213. Other than that, E.P. does not respond to Defendant's *Monell* argument at all. With regard to this Plaintiff, there can be no *Monell* claim, since the Court's findings herein have dismissed all of E.P.'s claims against the School Defendants. Municipal liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir.1999) ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."); *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir.1996) (quotation omitted) ("A municipality may not be held liable where there was no underlying

constitutional violation by any of its officers.").

## Conclusion

Assuming the truth of the allegations in the Amended Complaint as to E.P., the Court is left with the distinct impression that there are serious issues which need to be addressed at Carlos Vigil Middle School concerning the safety of the children who attend school there. Nevertheless, the factual allegations regarding E.P. alone do not create viable federal causes of action, nor do they create subject matter jurisdiction.

In sum, the Court makes these findings and conclusions:

- The Court GRANTS the School Defendants' motion to dismiss on Count II of the Amended Complaint as to Plaintiff E.P.  The Court agrees with Defendants that he has no standing to bring such a claim.  The only "injuries" he allegedly sustained himself were rude remarks made by security guard Marty Valero.  This is not an injury-in-fact sufficient to give him standing for Count II of the Amended Complaint;

- The Court GRANTS the School Defendants' motion to dismiss the School Defendants as to the negligence claim asserted by E.P. in Count IV, on the basis that E.P. has not established an injury-in-fact for any negligence claims, nor does he identify a waiver of sovereign immunity for any negligence claim he might assert;

- The Court GRANTS the School Defendants' motion to dismiss E.P.'s state constitutional claims asserted in Counts VI and VII of the Amended Complaint because the Tort Claims Act does not have a waiver of immunity for claims against government entities or officials for state constitutional torts, and because there is no private cause of action under the New Mexico Constitution without a waiver;

- The Court GRANTS the School Defendants' motion to dismiss the procedural due process claims asserted by E.P. in Count VII of the Amended Complaint because the Amended Complaint offers no facts which suggest the existence of a property right or any process that was due E.P. but not afforded to him;

- The Court GRANTS the School Defendants' motion to dismiss E.P.'s substantive due process claims asserted in Count IX on the basis that Plaintiff fails to demonstrate Article III standing sufficient to confer subject matter jurisdiction over that claim;

- The Court GRANTS the School Defendants' motion to dismiss E.P.'s equal protection claim asserted in Count X of the Amended Complaint because E.P. has not sufficiently alleged such a claim based on either membership in a protected group, or as an individual

who was injured by intentional or purposeful discrimination without identification of a class ("class of one"); nor has Plaintiff alleged that he suffered any injury recognizable as a result of discriminatory intent;

- The Court GRANTS the School Defendants' motion to dismiss E.P.'s Fourth Amendment claims in Counts XI and XII which assert violations of the Fourth Amendment, based on unlawful search and seizure, and excessive force, inasmuch as Plaintiff alleges such claims against the School Defendants. While Plaintiff has failed to respond to Defendants' arguments on these claims and not clarified whether these claims are being asserted against the School Defendants, the Court agrees with Defendants that the Amended Complaint contains no allegations which would support these claims;

- The Court GRANTS the School Defendants' motion to dismiss any *Monell* claim Plaintiff E.P. might assert, based on the Court's findings herein which have found no underlying constitutional violation.[6]

**THEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss Amended Complaint Regarding the Claims Filed by Plaintiff E.P., filed by the School Defendants (**Doc. 25**) is hereby GRANTED, for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that it has granted all of the relief requested in this motion to dismiss, as to Plaintiff E.P. The Court has not determined whether there are other claims E.P. has asserted against the School Defendants which the School Defendants have not included in this motion. If E.P. has asserted no other claims against the School Defendants other than what has been addressed in this Memorandum Opinion and Order, then all of E.P. claims against these particular Defendants would be dismissed.

Case 6:10-cv-00651-WJ-LFG   Document 123   Filed 04/08/11   Page 20 of 20