IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al,

    Plaintiffs,

vs.   No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS'
CLAIMS AGAINST PRIVATE SECURITY GUARD DEFENDANTS**

THIS MATTER comes before the Court following supplemental briefing on the issue of whether Plaintiffs may assert § 1983 claims against certain named Defendants. Having reviewed the parties' supplemental briefs on the issue, as well as the applicable law, I find and conclude that Defendant security guards Jason Archuleta, Geraldine Martinez and John Doe are not "state actors" for purposes of § 1983.

**BACKGROUND**

Plaintiffs in this case are students who were enrolled at either Española Valley High School or Carlos Vigil Middle School in northern-central New Mexico. The Third Amended Complaint (Doc. 196) brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract and breach of implied contract, and violations of various rights under the New Mexico and United States Constitutions. Plaintiffs allege that the school administration is apathetic about school safety,

Defendants have created a dangerous environment for students, and they have taken little or no action to prevent attacks on students by other students.

On June 4, 2012, the Court entered a Memorandum Opinion and Order dismissing with prejudice breach of contract claims asserted by Plaintiffs S.M., E.S. and G.T. against Defendants Elias Coriz and Cheryl Montoya (Doc. 268). The Court concluded that the Third Amended Complaint sufficiently alleges conduct on the part of Defendants Coriz and Montoya for negligence claims, requiring that they remain as named individual Defendants in this action. The Court also noted that Plaintiffs are asserting federal claims under § 1983 against the individual ProSec security guards Geraldine Martinez, Jason Archuleta and a John Doe ("ProSec security guards"):

> For these § 1983 claims, Plaintiffs allege that the security guards are sued in their individual capacities under § 1983, were acting as agents of the school board, and were acting under color of law. TAC, par. 15. In order for Big Ross' employees to qualify as state actors or agents of the school board, it must be assumed that the security guards are state actors, and that Big Ross [d/b/a ProSec] is a "person" under § 1983. The Court is not, however, ready to make that assumption, and presents this issue to counsel in order to assist the Court in determining whether, as a matter of law, §1983 claims may be asserted against Defendants.

Doc. 268 at 8. The Court required counsel to submit supplemental briefs on the issue of whether § 1983 claims may be asserted against the ProSec security guards. The parties have filed the supplemental briefs, and the Court now considers these submissions.[1]

## DISCUSSION

Defendants contend that Plaintiffs' § 1983 claims against the ProSec security guards are improper because none of them are "state actors" who acted under "color of law." Thus, whether Plaintiffs may assert these claims against the individual guards turns on whether the guards can be considered "state actors."

---

[1] The issue of whether the individual security guards are considered "state actors" is also relevant to two other motions to dismiss filed by Defendants Archuleta and Martinez (*see* Docs. 252 and 253).

In order to state a claim under § 1983, a plaintiff must show (1) deprivation of a right secured by the federal constitution or federal laws and (2) that the deprivation was caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law when he abuses a position given to him by the state. *Id.* at 50 (1988).

The Tenth Circuit uses a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case: (1) the public function test, where a private entity that exercises powers traditionally exclusively reserved to the state is engaged in state action; (2) the nexus test, where a court considers whether a sufficiently close nexus exists between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself; (3) the symbiotic relationship test which considers whether the state has so far insinuated itself into a position of interdependence with the private party that there is a symbiotic relationship between them; and (4) the joint action test where if a private party is a willful participant in joint activity with the state or its agents, state action is present. *Id*. (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995)).

**Plaintiff S.M.** is a 13 year-old-female student who alleges that in January 2010, Eva Herrera, secretary to the school counselor and Defendant Geraldine Martinez entered her math class and removed her from class. Martinez and Herrera escorted Plaintiff to a bathroom where Plaintiff was told to remove her bra and shirt. S.M. took off her sweater, but refused to remove more clothing. Martinez and Herrera asked her to take off her shirt four more times, but S.M. refused. Finally, Martinez and Herrera threatened S.M. with a strip search if S.M. did not turn over her cell phone. S.M. then turned over her cell phone. TAC ¶¶ 35-46. S.M. called her mother, Sandra Montoya, after the incident, and Ms. Montoya complained about the incident to school personnel. In addition to alleging claims of unlawful seizure and due process violations, S.M. also alleges retaliation under the First Amendment because she "is now afraid to attend school and is afraid of

retaliation from [Herrera and Martinez]". TAC ¶ 57. S.M. asserts the following § 1983 claims against Geraldine Martinez: substantive due process in Count VII, Fourth Amendment unlawful seizure in Count IX and First Amendment in Count XI.

**Plaintiff E.S.** is a blind, mentally disabled 15 year-old female student. She alleges that Defendant Archuleta lured her from her in-school suspension room, took her in his car after school to a remote location, and raped her. TAC ¶¶ 68-97. E.S. asserts the following § 1983 claims against Jason Archuleta: substantive due process in Count VII, equal protection in Count VIII, Fourth Amendment unlawful seizure in Count IX, and Fourth Amendment excessive force in Count X.

**Plaintiff G.T.** is a 17-year old female student enrolled in special education classes. She alleges due process violations against the John Doe security guard. G.T. asserts that in December 2009, two guards separated G.T. from another girl with whom she had been fighting. One of the guards then took her to the Teen Center and held G.T.'s arms behind her back, causing G.T. extreme pain and distress. TAC ¶¶ 128-152.[2] G.T. asserts a substantive due process claim against John Doe in Count VII.

Plaintiffs argue that the ProSec guards are state actors because they are paid out of public funds by the school, and because the guards gained access to Plaintiffs "only by virtue of their status as school security guards." Doc. 274 at 10 & 12. These reasons, by themselves, are not sufficient to find that the ProSec guards are state actors, nor do Plaintiffs offer case law to support these bald legal conclusions. A salary that originates from public funds does not mean

---

[2] The TAC describes the incident further. The school's assistant principal insisted that law enforcement arrest G.T., and a police officer who arrived at the Teen Center and restrained G.T. on the floor. G.T.'s parents were called to the school and explained that G.T. suffers from ADHD and "defiant opposition disorder" and that G.T. was participating in a Behavioral Intervention Plan. TAC ¶¶ 139, 141. These additional facts provide some general context to G.T.'s claims in general, but are not relevant to, or dispositive of, the threshold question of whether Defendants Archuleta and Martinez are state actors.

that the payee is a state actor; nor does one become a state actor because he or she has official access to school property.

State employment is "generally sufficient to render the defendant a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). At the same time, "otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citation omitted). In this case, the Defendant security guards are employees of a private security company. Therefore, a separate inquiry is required in order to determine whether their actions amount to state action. The analysis is fact-intensive. Its central purpose is to "assure that constitutional standards are invoked" in making the State *responsible* for the conduct of a private actor. *Johnson v. Rodrigues,* 293 F.3d 1196, 1206 (10th Cir. 2002) (citing *Crissman v. Dover Downs Entm't*, 289 F.3d 231, 239 (3d Cir. 2002) (en banc) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*., 531 U.S. 288 (2001)). State action may be found "if, though *only if*, there is such a 'close nexus *between the State and the challenged action*' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Johnson v. Rodrigues*, 293 F.3d at 1206 (citing *Brentwood*, 53 U.S. at 295) (emphasis supplied in original)).

I.  **PUBLIC FUNCTION TEST**

Here, the Board contracted with Big Ross for security services for students and faculty at the school. The bid proposal submitted by the Board of Education for the Espanola Public Schools ("Board of Education" or "Board") states that the contractor's employees are not considered employees of the Espanola Public School district, nor are they covered by Workmen's Compensation of the Board. Doc. 274-1.

Plaintiffs rely mainly on the public function test in arguing that the security guards acted under color of state law. They urge the Court to consider that the security guards' function is intertwined with the school's inherent obligation to provide students with a safe learning environment, and that this public function makes them state actors. However, performing a public function alone is insufficient to satisfy the state actor doctrine requirements. The action must be of the type which traditionally is the exclusive prerogative of the state. Plaintiffs cite to *West v. Atkins*, 487 U.S. 42 (1988) for support, but *West* is not helpful. In *West*, a private physician who had contracted with a state prison to treat inmates was found to be a state actor because the state had delegated to him its constitutional duty to provide adequate medical treatment to those in its custody. *Id*. at 55-56. Thus, the court found that it was the "physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id*.

Providing security services may be aligned with a school's duty to provide a safe learning environment for students, but it is not a traditional function which is exclusively provided by schools. *See Giron v. Corrections Corp. of America,* 14 F.Supp.2d 1245, 1250 (D.N.M.,1998) (". . . when a governmental entity delegates one of its traditional or "public functions" to a private entity, the private entity may be held liable under the Constitution with respect to its performance of that function. . . ."). The Court acknowledges that providing a safe and secure learning environment for children is incidental to a school's obligation to provide a public education. However, while schools are required to have teachers to teach the students, they are not necessarily required to hire (or contract with) security guards, although hiring a private security service is one way a school may choose to provide a safe environment for learning. A school may be faulted for failing to provide a safe environment, but the school's liability does not turn on whether security guards were used. This is unlike a prison's obligation to provide prisoners with medical care,

6

whether or not the prison officials believe there may be other ways to keep prisoners healthy while they are incarcerated.

Another example may make the distinction more clear: schools provide students with some kind of food service. However, the vendors who contract with schools to provide the food do not become state actors by performing a public function for the school, because that function is not one traditionally exclusively reserved to the state (i.e., school).

Plaintiffs offer two cases for the proposition that under New Mexico law, public school security guards serve a public function.[3] In the first case, *State v. Santiago*, the New Mexico Supreme Court held that private security guards at a shopping mall could not be characterized as state actors under the public function doctrine for Fourth Amendment purposes. 147 N.M. 76 (2009). The court noted that authorities have split as to whether law enforcement is a function traditionally and exclusively reserved to the state. Some courts hold that the function of a security guard with limited powers is not traditionally the exclusive prerogative of the state, and thus the guard is not performing a public function that would qualify the guard as a state actor. *Santiago*, 147 N.M. at 85. Other courts have held that store security guards engage in a public function, and are therefore state actors when they arrest and search suspects. *Id*. at 86. Critical here is that, as *Santiago* noted, the private security guards in the latter group of cases were authorized by statute to perform these functions, and thus acted pursuant to the state's delegation of its police powers. *Id*. at 86 (citing cases from other jurisdictions). Thus, private security guards (including employees of a private security company in the instant case) may become state

---

[3] The Court does not consider other cases cited by Plaintiffs unless otherwise noted, because they are not helpful. For example, Plaintiffs cite to several cases for the proposition that New Mexico public school children "may not be deprived of [public education] by a private security company funded exclusively by public money." Doc. 274 at 10. However, these cases have nothing to do with the issue before the Court; they are generally about a student's property right to attend school.

actors for Fourth Amendment purposes if a statute confers authority consistent with conduct relative to the Fourth Amendment.

In the second case cited by Plaintiffs, *State v. Johnson*, 147 N.M. 177 (2009), the defendant had allegedly struck three private security guards at Gallup High School while visiting the school. The sole issue before the New Mexico Supreme Court in that case was whether private school security guards may be considered "employees" of the school board for purposes of NMSA 1978, § 30-3-9.[4] Section 30-3-9 was passed by the New Mexico Legislature in 1989 to reduce violence and vandalism in public schools. The statute criminalizes assault and battery on school employees. §30-3-9(A)(1). The statute defines "school employee" as a "member of a local public school board and public school administrators, teachers and other employees of that board." §30-3-9(A)(2). For guidance, the Supreme Court looked to § 30-3-9 as well as the New Mexico Administrative Code. For example, the court noted that the State Board of Education defines "[s]chool personnel" as:

> all members of the staff, faculty and administration *employed by the local school board* [,] . . . includ[ing] school security officers[.] The term includes *school security officers*, school bus drivers and their aides, and also authorized agents of the schools, such as volunteers or chaperons, whose responsibilities include supervision of students.

6.11.2.7(T) NMAC (emphasis added). Another regulation allows disciplinary action to be taken where a student commits any act "which endangers the health or safety of students, school personnel or others for whose safety the public school is responsible." 6.11.2.10(C) NMAC.

---

[4] The opinion reversed the decision of the New Mexico Court of Appeals, which had determined that private security guards were not school employees under 30-3-9. The Court of Appeals' analyzed whether an employer-employee relationship existed, and considered the degree of control the school had as an employer over the work performed by the security guards. Court of Appeals Judge Lynn Pickard wrote a dissent, stating that the inquiry should be based on the plain meaning of "employee" in the statute, rather than "right to control" analysis. Clearly, the New Mexico Supreme Court agreed with Judge Pickard, as the Supreme Court's holding was based on the language in §30-3-9 and related administrative code.

The *Johnson* court acknowledged that, while the regulations were not meant to interpret § 30-3-9, the language in the statute and regulations together supported the conclusion that (1) the ordinary meaning of "school employee" includes school security guards providing services at a school pursuant to a contract with the school board; and (2) deterring assaults on security guards furthers the policy to provide a safe environment in which students can learn. *Johnson* at 181.

Plaintiffs ask the Court to take a leap from the conclusions made by the New Mexico Supreme Court in *Santiago* and *Johnson* into a finding that the ProSec guards in this case are state actors for purposes of § 1983. This leap requires a greater legal stretch than the Court is comfortable making. *Santiago* sets a starting point which discourages the notion of private security guards as state actors:

> In contrast to other jurisdictions that have delegated police powers to private security guards, the New Mexico Legislature has not granted private security guards broad police powers, nor has it authorized private security personnel to arrest criminal suspects.

*Santiago,* 147 N.M. at 86. *Santiago* involved the search and arrest of an individual by private security guards at a privately owned shopping mall, which limits its application to private security guards employed by contract at a public school. *Santiago* is useful in that it advances an inquiry into whether there might be a statute or other authority which transforms otherwise private individuals into state actors. However, *Johnson* does not provide the authority necessary to find and conclude that private school security guards become state actors when the company they work for contracts with the school board.

The New Mexico Supreme Court's holding that school security guards are "school employees" for purposes of § 30-3-9 does not lead to the conclusion that school security guards are state actors under § 1983. Further, nothing in the plain language of § 30-3-9 or the Board of Education's regulations implies that all "school employees" are considered state actors for

9

purposes of § 1983.  Reaching such a conclusion leads to odd results: if school security guards are considered state actors solely by virtue of their inclusion in the definition of "school employees" by the Board of Education, then school bus drivers and school volunteers would be considered state actors as well. This would hold the state responsible for the conduct of all of these individuals.

The Court is reluctant to broaden the holdings of *Santiago* and *Johnson* beyond the scope of their facts and specific issues.  Status as "school employee" is insufficient to mean "state actor" based on the plain language of the relevant statute and local board of education regulations.  Also, the reasoning in *Santiago* and *Johnson* does not align with the usual analysis courts are required to conduct to determine whether an individual is a state actor.[5]  Plaintiffs have presented the Court with an interesting detour concerning the state actor doctrine, but the analysis returns full circle to a consideration of the usual tests used to determine whether an individual has acted under color of state law.  Plaintiffs suggest that discovery "may be necessary" to develop the facts necessary for the Court to make findings on this issue, Doc. 274 at 18, but the Court sees no reason for delay based on conjecture.[6]

The Court recognizes that school violence and school shootings have created a heightened awareness of the need for security in the public schools.  As discussed above, some steps have already been taken through state statute and local school board regulations to make public schools safer and to ensure that there are consequences for those who commit violence on school personnel.  This Court is reluctant to reach the conclusion that school security guards are

---

[5] The "state actor" concept can be difficult to grasp.  Just as every "school employee" is not a "state actor," by contrast, someone who is a "state actor" is not always a "public employee" under the New Mexico Tort Claims Act. *See,* e.g., *Spurlock et al. v. Townes et al.*, 09cv00786 WJ-SMV, Doc. 88 at 3.

[6] Parties have also addressed the "state actor" issue their briefs on motions to dismiss § 1983 claims by Defendants Archuleta and Martinez.  Docs. 252 and 253.  The Court has considered these arguments as well.

state actors (and thus that Plaintiffs have a federal cause of action against the security guards) as a result of these limited changes in state law.

Based on the foregoing findings, the Court finds that the ProSec guards are not state actors under the public function test.

## II.     Other Tests Under State Actor Doctrine

### A.  Nexus Test

Under the nexus test, the state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. *Johnson v. Rodrigues*, 293 F.3d at 1203; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Plaintiffs contend that there is a nexus between Defendants' misuse of their authority and the alleged wrongful actions: Defendant Martinez' access to Plaintiff S.M.'s class in order to aid in removing her from class; Defendant Archuleta luring Plaintiff E.S. from her in-school suspension class into his car; and Defendant John Doe's carrying Plaintiff G.T. to the Teen Center after separating Plaintiff from a fight with another student.

The Court agrees with Plaintiffs that Defendants misused their authority, but finds that Plaintiffs conflate the concept of state action with the authority Defendants had by virtue of the job for which they were hired. Plaintiffs compare this situation to the prison guard in *Giron*, who was clearly misusing his authority as a state employee to sexually assault a vulnerable female inmate. Here, however, Defendants were hired to provide security services, which gave them access to school classrooms as well as a certain authority of position. This authority is just as easily to be misused as is authority conferred by the state. *Cmp. Pitts v. Turner & Boisseau, Chartered*, 850 F.2d 650, 652 (10th Cir. 1988) (acting "under color of state law" is defined as

11

"the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.")  Moreover, with regard to all three Plaintiffs' allegations, particularly that of Plaintiff G.T., the Court doubts that the actions of the ProSec guards have the indicia of state action.  The Board's proposal for private security services required a professional code of behavior, which prohibited fraternization with students and the use of force unless the safety of a security guard or another person was at risk.  Doc. 274-1 at 5. *See Jojola v. Chavez,* 55 F.3d 488 at 494 (allegations were insufficient to demonstrate school janitor possessed state authority, either actual or apparent, when he molested a female student).

Plaintiffs are correct that the ProSec security guards gained access to the Plaintiffs only by virtue of their status as school security guards.  Defendants' job description was aligned with the school's purpose in keeping the school safe, and the physical location at which the security guards were required to perform their services was at the school.  However, these facts do not demonstrate a sufficient nexus between the guards' actions and the school's exercise of coercive power to consider those actions as state action.

B.      Symbiotic Relationship Test

Under the analysis referred to as the "symbiotic relationship test," the state must have so far "insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." *Johnson v. Rodrigues,* 293 F.3d at 1204.  In applying this test, there must be either a requirement that both public and private actors share a common, unconstitutional goal, or a "substantial degree of cooperative action" between state and private officials. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995) (considering ways in which courts have applied the test).

Plaintiffs offer cases from the Tenth Circuit which have held that a person who is paid by the State of New Mexico to provide care for children in state custody is a state actor. *See* Doc. 274 at 7. As mentioned previously, the state action tests are fact-driven. In the cases offered by Plaintiffs, the state had legal custody of the children, who were also in foster parents' care and custody.[7] These are the type of facts which lend themselves to the "symbiotic test" analysis. In the instant case, the facts do not support a finding that the ProSec guards and the school were joint participants in the alleged conduct. For Plaintiffs E.S. and G.T., there were no school officials present during the alleged misconduct. In the situation involving Plaintiff S.M., Defendant Martinez did accompany the school counselor's secretary into Plaintiff's math class and then both of them escorted Plaintiff into a bathroom in an effort to obtain her cell phone. However, these facts are a far cry from those in cases case involving child custody and foster parents. Thus, Defendants' conduct cannot be considered state action based on the symbiotic relationship test.

    C.    <u>Joint Action Test</u>

Under the joint action test, "state action is also present if a private party is a 'willful participant in joint action with the State or its agents.'" *Johnson v. Rodrigues,* 293 F.3d at 1205. In arguing that the school board was a joint participant in the security guards' conduct, Plaintiffs cite to *Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982), where the Tenth Circuit held that a school operating as a correctional detention facility was a state actor. The school was privately owned and operated, but it received federal and state funds, which the court found sufficient to find that the state was a "joint participant" in the alleged abuse at the school. However, the instant case is factually distinguishable from *Milonas* because the ProSec guards are private security guards employed by a private company which contracted with the Espanola School

---

[7] *See, e.g.*, *Bailey v. Pacheco,* No. Civ. 96-959 LH/DJS (D.N.M., Mem. Op. & Order Apr. 3, 1998, at 6-11).

Board. Thus, the question in this case—whether private security guards who are employed by a private company are state actors—is a different question from the one that faced the district court and the Tenth Circuit in *Milonas*.

In considering the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. Just as with the other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient. *Gallagher*, 49 F.3d at 1453. The involvement of the ProSec guards in this case cannot be said to have been conduct in concert with a school official's deprivation of constitutional rights. There is no suggestion that anyone at the school knew that Defendant Archuleta was luring Plaintiff E.S. from her in-school suspension classroom into his car at the time the assault occurred. Similarly, there is no allegation that a school official aided Defendant John Doe in separating Plaintiff G.T. from another girl with whom she had been fighting. Admittedly, there was some school official involvement when Defendant Martinez accompanied the school counselor's secretary into Plaintiff S.M.'s classroom. However, Defendant Doe's presence when Plaintiff was removed from the classroom could be seen as incidental to performing his job duties as security guard, rather than done with willful purpose of depriving Plaintiff S.M. of her constitutional rights. There are no facts alleged which suggest that Defendant Doe's presence was more than "mere acquiescence" of the actions taken by the school counselor's secretary.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiffs S.M., E.S. and G.T. are precluded from asserting § 1983 claims against Defendants Jason Archuleta, Geraldine Martinez and John Doe. The state action requirement is a jurisdictional requisite for a § 1983 action. *Jojola v.*

*Chavez*, 55 F.3d at 492; *Polk County v. Dodson,* 454 U.S. 312, 315 (1981) (state action requirement furthers the "fundamental goals" of preserving an area of individual freedom by avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed). *Lugar v. Edmondson Oil Co.,* 457 U.S. at 936. Plaintiffs have not shown the required nexus between the state (the Espanola School Board) and these Defendants, and therefore Plaintiffs cannot pursue their § 1983 claims against these Defendants.

**SO ORDERED**.[8]

_____
UNITED STATES DISTRICT JUDGE

---

[8] The Court does not consider at this time the "state actor" issue that may be raised in any of the pending motions, but reserves ruling on those motions for a later time.