IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al.,

    Plaintiffs,

    v.                                                  No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
SCHOOL DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court upon a Motion to Dismiss the Third Amended Complaint Filed by Plaintiff C.G., filed April 20, 2012 **(Doc. 241)** by Defendants Española Public School District Board of Education, Dorothy Sanchez, Devanna Ortega, Lewis Johnson, and Dennis Gallegos ("School Defendants"). Having reviewed the parties' briefs and applicable law, I find that the School Defendants' motion is granted in part with regard to Plaintiff C.G.'s § 1983 substantive due process claim in Count 7. The motion is denied in part with regard to Plaintiff's negligence claim in Count 3. The Court defers ruling on whether Plaintiff's claims in Count 5 (the New Mexico State Constitution) and Count 12 (municipal liability) should be dismissed.

**BACKGROUND**

Plaintiffs in this case are students who were enrolled at either Española Valley High School or Carlos Vigil Middle School in northern-central New Mexico. The Third Amended Complaint (Doc. 196), brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract

and breach of implied contract, and violations of various rights under the New Mexico and United States Constitutions. Plaintiffs allege that the school administration is apathetic about school safety, Defendants have created a dangerous environment for students, and they have taken little or no action to prevent attacks on students by other students.

Defendants have filed numerous motions to dismiss in this case, each one directed against the different Plaintiffs. The current list of pending motions represents the third round of motions to dismiss, resulting from the Court's denial without prejudice of previously filed motions. The Court's disposition of those motions allowed them to be re-filed subject to Plaintiffs' clarification of the claims asserted in the complaint. *See* Docs. 125 & 206. The Third Amended Complaint (Doc. 196) was filed on October 26, 2011. That complaint includes as an attachment a chart of all claims asserted by the various Plaintiffs against the various Defendants. Doc. 196-1 ("Claims Chart").

The Court has made certain rulings in this case which are not affected by the re-filing of motions. For example, the Court has dismissed Plaintiffs' breach of contract claims based on third-party beneficiary status. *See* Docs. 265 (*see also* Doc. 124) & 268. The Court also ruled that the Big Ross security guards are not "state actors" for purposes of § 1983, dismissing § 1983 claims asserted by Plaintiffs against those Defendants. *See* Docs. 324 & 325.

## DISCUSSION

In the instant motion, the School Defendants move for dismissal of Plaintiff C.G.'s claims for Fourteenth Amendment Substantive Due Process violations along with § 1983 liability under *Monell*;[1] and claims for injunctive relief under the New Mexico Constitution for substantive due process violations. Specifically, they move for dismissal on Count 3 which,

---

[1] *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

according to the Claims Chart, asserts negligence based on the New Mexico Tort Claims Act; Count 5, which alleges a violation of substantive due process under the New Mexico State Constitution, Art II, § 18 and seeks only declaratory and injunctive relief; Count 7, which alleges violations of substantive due process under the federal constitution and Count 12, which seeks municipal liability under *Monell*.

The Third Amended Complaint ("TAC") alleges that C.G. was attacked by another student at Carlos Vigil Middle School. Plaintiff was taken to the school nurse and then to the emergency room and suffered undefined physical injuries and emotional distress. TAC ¶ 123. The attacker was identified, suspended for 25 days, and returned to school four days before the suspension period ended.

## I. Legal Standard

School Defendants have raised the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of pre-existing law. *Beedle vs. Wilson,* 422 F.3d 1059 (10th Cir. 2005). This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Id.*

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007)). A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id.*

## II.     Plaintiff's Rule 56(d) Affidavit

Plaintiffs ask the Court to deny the School Defendants' motion to dismiss, or in the alternative, convert it to a motion for summary judgment. Plaintiffs have made similar requests in response to the School Defendants' other pending motions to dismiss. Plaintiffs attached a Rule 56(d) affidavit to these responses, seeking an Order from this Court allowing Plaintiffs to conduct limited discovery pursuant to Fed.R.Civ.P.56(d) before responding to defendants' motions to dismiss.

Plaintiffs' request for additional discovery has been denied. United States Magistrate Judge Lorenzo F. Garcia found Plaintiffs' Rule 56(d) affidavits to be insufficient, and that Plaintiffs failed to justify why the discovery was not already obtained or could not be obtained. Doc. 326 at 11. Plaintiffs' objected to Judge Garcia's findings. Doc. 327. This Court overruled those objections, but came to no decision at the time as to whether Defendants' motions to dismiss should be converted to motions to summary judgment. Doc. 328 at 8. The Court has now reviewed Defendants' motions, and finds no reason to convert the motions to summary judgment motions. The motions seek dismissal of some of Plaintiffs' claims on a legal basis,

based on the factual allegations in the Third Amended Complaint (Doc. 196). Also, Plaintiffs have been able to adequately respond to Defendants' motions without further discovery. Thus, the Court considers the instant motion without converting it to a motion for summary judgment.

### III. Claims Brought Under State Constitution (Count 5)

Count 5 of the TAC alleges substantive due process violations under the New Mexico Constitution, Article II, § 18, and seeks declaratory and injunctive relief. Defendants contend that this claim is legally deficient and they intend to file a separate brief on these claims. Therefore, the Court defers ruling on this claim.[2]

### IV. Substantive Due Process

The Fourteenth Amendment prohibits violations of substantive due process rights by government officials who are state actors. However, state actors are liable only for their own acts, and not for the violent acts of third parties. *See Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996). There are two exceptions to this general rule. First, the "special relationship" doctrine exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection. Second, the "danger creation" theory provides that a state may be liable for an individual's safety "if it created the danger that harmed the individual." *Id.* (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)); *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989)).

The Third Amended Complaint states a substantive due process claim in Count 5, but does not specify which of the theories apply. In the response, Plaintiffs note that they bring substantive due process claims only under the danger creation theory. Doc. 277 at 10.

#### A. Special Relationship Theory

---

[2] As Defendants note, the Court previously entered an Order dismissing with prejudice Plaintiffs' claims based on violations of the New Mexico State Constitution, Article II, § 18 (Doc. 124). Subsequently, the Court granted Plaintiffs' motion to clarify the Order and found that the Court's dismissal of those claims seeking injunctive relief was premature because the parties had not specifically addressed the issue. (Doc. 145).

Plaintiff C.G. relies only on the danger creation theory in asserting violations of her substantive due process rights. However, because the danger creation theory actually grows out of the special relationship theory, some explanation of the latter may be helpful in analyzing Plaintiff's claim.

By definition, the special relationship theory necessarily only applies where a "custodial relationship" exists between the victim and the State. In *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989), the Supreme Court held that the State had no constitutional duty to protect a child from the father even after the State had received reports of possible abuse. *DeShaney* specifically examined the requirements concerning the special relationship theory, and found that such a relationship exists in instances, such as incarceration or institutionalization, where "the State takes a person into custody and holds him there against his will." *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. 998. In other words, the State's exercise of control must "so restrain[ ] an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Id.* at 200.

The Tenth Circuit has held that compulsory school attendance is insufficient to create a special relationship for the purpose of triggering an affirmative duty to provide protection to an individual. In *Seamons v. Snow,* the plaintiff was grabbed as he came out of the shower in the football locker room, forcibly restrained and bound to a towel rack with adhesive tape. 84 F.3d 1226, 1236. His genital area was also taped. After the student was restrained, one of his teammates brought a girl who the student had dated into the locker room to view him. The Tenth Circuit held that the school district was not liable to the plaintiff under the special relationship doctrine for injuries resulting from taunting and hostility by fellow students because compulsory attendance laws for public schools "do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school." 84 F.3d 1226, 1235

6

(10th Cir. 1996) (citing *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992)).[3] Thus, it is clear why Plaintiff C.G. does not rely on the special relationship theory for her substantive due process claim.

B.     Development of Danger Creation Theory in the Tenth Circuit

Plaintiff C.G. rests her substantive due process claim on the danger creation theory. Under this theory, a claim must be predicated on "reckless or intentional injury-causing state action which 'shocks the conscience.'" *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995), *cert. denied*, 516 U.S. 1118 (1996).

Tenth Circuit precedent has further developed the theory of the state-created danger doctrine. While *DeShaney* addressed liability only under a special relationship theory, the Tenth Circuit in *Graham v. Independent School Dist. No. I-89,* 22 F.3d 991 (10th Cir. 1994) noted that *DeShaney* left the "door open for liability where the State creates a dangerous situation for citizens in the free world or renders them more vulnerable to danger." 22 F.3d at 995 (cited in *Gray v. Univ. of Colo. Hosp. Authority,* 672 F.3d 909, 916 (10th Cir. 2012)). In *Graham*, the mother of a student who was allegedly shot and killed by another student brought a § 1983 action against the school district for not reacting to known threats made against her son. The student's mother contended that the school had knowledge of the violent propensities of one of its students, and had received warnings that a student who had threatened violence against the student was on school grounds with a gun. She argued that the school had created the danger because school officials knew or should have known of the danger to her son but failed to take action to secure his safety. The mother's position was that this knowledge, coupled with the

---

[3]   *See also Graham v. Independent School Dist. No. I-89,* 22 F.3d 991, 994 (10th Cir. 1994) (". . . we have clearly held compulsory school attendance laws do not spawn an affirmative duty to protect under the Fourteenth Amendment."); *Gray v. University of Colorado Hosp. Authority*, 672 F.3d 909, 997 n.4 (10th Cir. 2012) ("compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school.") (citing *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir.1992)).

quasi-custodial nature of school attendance, satisfied the standards articulated in *DeShaney* and created an affirmative constitutional duty to protect the students not only from the actions of the State and its agents, but also from the danger posed by unrelated third parties.[4] *Graham,* 22 F.3d at 992. The district court dismissed the case, and the Tenth Circuit Court of Appeals affirmed the dismissal, finding that school districts were not liable under either the special relationship or the danger creation theory. The Tenth Circuit cited reiterated that compulsory school attendance laws "do not spawn an affirmative duty to protect under the Fourteenth Amendment." 22 F.3d at 994.

The court also found that the school's alleged failure to take action designed to ensure the student's safety "in the face of known dangers" did not create a basis for liability under the danger creation theory. The Tenth Circuit held that even the foreseeability of harm cannot create an affirmative duty to protect without the existence of a custodial relationship, or without an affirmative act on the part of the school officials putting the student in danger. *Id.* at 994.

The plaintiffs in *Graham* presented the creative argument that school officials created a hazardous situation by placing the aggressor and victim in the same location. Both the district court and the Tenth Circuit Court of Appeals rejected this proposition, noting that "[n]otwithstanding defendants' specific knowledge of the propensities of the aggressors, any danger to the victims was 'too remote a consequence of [defendants] action to hold them responsible under the federal civil rights law.'" 22 F.3d at 995. The court also rejected the notion that enrolling the aggressor in public school constituted an "affirmative action" because the aggressor's enrollment preceded any knowledge of danger. *Id.*

---

[4] In *Graham,* the Tenth Circuit addressed a second case as well, involving another student who was stabbed on school premises. While the cases were not consolidated, both dismissal orders were issued by the same district court, and the Tenth Circuit addressed them jointly "because of the similarity of the issues presented." 22 F.3d at 993, n.2.

The Tenth Circuit recently reaffirmed its holdings in *Graham* in the case of *Gray v. University of Colorado Hosp. Authority*, 672 F.3d 909, 916 (10th Cir. 2012):

> At this early stage [in *Graham*] , we placed an important limitation on the state-created danger theory consistent with *DeShaney*. We established "[t]his state-created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Id*. (internal quotations omitted) (emphasis added). We expressly "h[e]ld foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship." *Graham,* 22 F.3d at 994. "[I]naction by the state in the face of a known danger is not enough to trigger the obligation" unless the State has "limited in some way the liberty of a citizen to act on his own behalf." .. . *Id*. at 995 (internal quotations omitted).

*Gray*, 672 F.3d at 916.

*Gray* emphasizes both the necessity of affirmative conduct as a "necessary precondition" to the application of the danger creation theory, as well as the insufficiency of foreseeability of harm on which to premise a substantive due process claim. In *Gray*, hospital personnel gave false reassurances to family members of an epileptic patient that he would be constantly monitored, when in reality the hospital's protocol allowed the staff to leave patients unattended and unobserved. The Tenth Circuit upheld the district court's dismissal of plaintiff's claim, holding that these untruthful assurances did not constitute "affirmative conduct" sufficient to invoke the state-created danger theory of constitutional liability. 672 F.3d at 925. Thus, under Tenth Circuit precedent, inaction by the state "[i]n the face of a known danger" is not enough to trigger an affirmative duty to protect an individual without the existence of a custodial relationship. *Gray,* 672 F.3d at 916 (quoting *Graham,* 22 F.3d at 995).[5] The foregoing

---

[5] Inaction by the State, however, "in the face of a known danger," could create liability if the state has a custodial or other "special relationship" with the individual. *Graham,* 22 F.3d at 995 (citing *Seamons v. Snow*, 84 F.3d at 1236). Indeed, a plaintiff need not rely on the danger creation theory where a custodial or special relationship exists between the victim and the State "because in that case, the relationship itself gives rise to the State's corresponding duty to protect the victim." *Gray v. University of Colorado Hosp. Authority*, 672 F.3d 909, 923 (10th Cir. 2012). In this case, since Plaintiff cannot base her substantive due process claim on this theory, she must show an affirmative act on the part of School Defendants in order to allege a substantive due process claim based on the danger creation theory.

discussion leads to this question in order to determine whether C.G. alleges a viable substantive due process claim: does C.G. allege facts that constitute affirmative conduct on the part of Defendants?

C.      Facts Alleged by C.G. in the Third Amended Complaint

Plaintiff C.G. contends that the School Defendants created the danger to C.G. and increased her vulnerability to the danger through policies that allowed the enumerated violations to specific plaintiffs.  However, it is a "well settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archueta v. McShan,* 897 F.2d 495, 497 (10th Cir. 1990).  Thus, C.G.'s substantive due process claim can be based only on actions by the School Defendants that allegedly violated her constitutional rights, not those of other plaintiffs.  For this reason, the Court finds that allegations based on school policies that allegedly violated other students' civil rights are insufficient to allege a substantive due process claim.

---

In *Gray,* the Tenth Circuit noted that an earlier Tenth Circuit case appears to allow something other than affirmative conduct to allege constitutional liability based on the state-created danger theory.  In *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226 (10th Cir.1999), a disabled  student was sexually assaulted by a larger boy while using the bathroom at a state school.  Despite the principal's assurances to the mother that the student would be supervised at all times while in the bathroom, the older boy sexually assaulted the child a second time when a teacher's aide abandoned her post outside the bathroom to answer the phone.  The district court dismissed the mother's danger creation claim for failure to allege the violation of a constitutional right.  On appeal, the Tenth Circuit rejected the mother's argument that the principal created the danger to her son "by directly participating in placing him in harm's way." Id. at 1238.  The court found that the complaint did not sufficiently plead affirmation action on the part of the principal and thus did not satisfy the "strict standards of substantive due process"  which were required under *Graham* and *Uhlrig*  for succeeding on a danger creation claim.  672 F.3d at 918.  The Tenth Circuit noted, however, that *Sutton* would have no precedential effect in the face of previous case law of *Graham* and *DeShaney,* which require either a custodial relationship or affirmative conduct on the part of the state in placing the plaintiff in danger, and which hold that "inaction by the state in the face of a known danger is not enough" to invoke the protections of the Due Process Clause.  *Gray*, 672 F.3d at 918 n.7 (quoting *DeShaney*, 489 U.S. at 197; *Graham,* 22 F.3d at 995).  The court also noted that that *Sutton's* recognition of a supervisory liability claim was referring to supervisory liability arising out of a subordinate's allegedly unconstitutional conduct, and thus, the underlying act for a supervisory liability claim would have to be itself a constitutional deprivation.

10

The TAC alleges that C.G. was a seventh grade student at Carlos Vigil Middle School, was an athlete "and at the top of her class" in the sixth grade, but began to "struggle." TAC ¶¶ 99-100. Members of a known Española gang targeted C.G. at school, and routinely followed C.G. around in the school hallways threatening her. TAC ¶¶ 101-102. Andrea Serna was C.G.'s mother, and also worked as a counselor at Carlos Vigil Middle School. She had "growing concerns for the safety of all children in the Española secondary schools," and organized a community meeting in the fall of 2009 to address this issue. TAC ¶¶ 105-106. Defendant Assistant Principal Dennis Gallegos and Defendant Security Guard Geraldine Martinez attended this meeting, along with other concerned parents. School officials failed to implement any corrective action to address violence following this meeting. TAC ¶ 107. Plaintiff C.G. continued to be threatened by the student gang members, who told her that if she or her mother reported anything further, C.G. would get beaten. TAC ¶¶ 108-109. Ms. Serna again met with Defendant Associate Superintendent Dorothy Sanchez in April 2010 to notify Ms. Sanchez of her "growing concerns for the safety of all children in the Española secondary schools." Ms. Serna voiced specific complaints about finding security guards asleep at their posts, students left unattended in classrooms, and gang violence continuing unchecked. TAC ¶ 111. Ms. Sanchez told Ms. Serna that she would pass her concerns on to Defendant Superintendent Janette Archuleta who would contact Ms. Serna to discuss these issues, but Ms. Serna never heard from Ms. Archuleta. ¶¶ 112-113.

The TAC alleges that on April 9, 2010, C.G. overheard some students say there would be a fight that day. C.G. was struck several times from behind by C.S., another female student, and another student took a video of the attack on a cell phone. A teacher went into the hall after the attack, saw blood on the floor, and followed it to where C.G. was laying down in the bathroom. C.G. was taken to the school nurse, who contacted Ms. Serna. When Ms. Serna arrived, a

security guard informed her that they discovered who attacked her daughter, and that the school had suspended the student for 25 days. Ms. Serna took her daughter to the emergency room. TAC ¶¶ 114-122. The attack caused C.G. severe emotional distress and physical injuries, "impacting her ability to succeed in school and in life." TAC ¶ 123.

D.  Sufficiency of the Allegations Under the Danger Creation Theory

Plaintiff C.G. claims that she has adequately pled such a substantive due process claim under the danger creation theory, specifically in the failure of the School Defendants to take any steps to protect C.G., despite actual knowledge that she was at risk of being attacked. Plaintiff contends that the allegations meet the requirements for a prima facie case of a substantive due process claim based on a danger creation theory. Under these requirements, a plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

Plaintiffs contend that C.G.'s allegations meet all of the above, and demonstrate conduct on the part of the School Defendants that "shocks the conscience." *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008). However, Plaintiffs gloss over the Tenth Circuit's requirement that the "conduct" putting the plaintiff at substantial risk of harm be an "affirmative act." In *Robbins*, on which Plaintiffs rely, a child suffered blunt force trauma to the head at a day care center, resulting in her death. The district court granted summary judgment to the Department of Social Services, but denied the motion as to the individual defendants. The Tenth Circuit Court of Appeals remanded the case for dismissal, finding that the conduct in question

did not constitute an affirmative act. The court noted that "the only affirmative act alleged is a negligent licensing decision" and "assurances as to the quality of care" that the child would receive at the day care center. *Id.* at 1251.

So too, in this case, Plaintiff C.G. is required to allege affirmative acts on the part of the School Defendants putting C.G. in danger. The TAC does not allege such acts. First, the School Defendants' "knowledge" of any serious risk of harm to C.G. is based on the concerns of Ms. Serna presented to the school officials at Carlos Vigil Middle School. Ms. Serna voiced her "growing concerns" regarding generalized gang violence at the schools rather than any particularized threat of danger to her daughter, C.G. Also, while C.G. overheard students talking about a fight that day, there is no assertion that C.G. passed this information along to any of the school officials, or even her mother. Further, based on Tenth Circuit precedent, even if the TAC can be considered to allege the harm to C.G. that was foreseeable, that would not be enough to meet the strict standards set out under *Uhlrig, Graham,* and *Gray* without the assertion of an affirmative act. School Defendants point out that the TAC contains factual allegations that affirmative acts were taken by school officials which show that they were not apathetic to the situation, including suspending and arresting the offending students and parent meetings discussing school violence. *See* Doc. 295 at 5-6 (listing allegations in the TAC). While these allegations have no relevance to Plaintiff's obligation to assert affirmative conduct which put C.G. in harm's way, nevertheless they demonstrate the type of affirmative acts required to allege a viable claim based on the danger creation theory.

Second, Plaintiff claims that the School Defendants' conduct "shocks the conscience." However, the allegations state that the school officials attended the meetings organized by Ms. Serna, but "failed to implement any corrective action to address violence" following the meeting (TAC ¶ 107) and that Ms. Sanchez dropped the ball in passing Ms. Serna's concerns along to

Superintendent Janette Archuleta. TAC ¶¶ 111-112. This is negligence, not affirmative conduct which creates a duty to protect under the substantive due process clause.

Third, the school's contract with Big Ross does not constitute the requisite "affirmative act." It is a wild stretch to argue that a school's hiring of a security company to provide security for the school is conduct that puts students in harm's way. The actual conduct alleged is the security company's failure to curb school violence, and the School Defendants' failure to ensure that the security company was doing its job. In addition, any danger to C.G. as a result of the School Defendants' hiring of Big Ross was, like the placing of the student in *Graham* in the same location, "too remote a consequence of [defendants] action to hold them responsible under the federal civil rights law." *See Graham,* 22 F.3d at 995. Thus, the School Defendants' alleged failure to oversee the job done by Big Ross does not constitute an "affirmative act" for purposes of bringing a claim under the danger creation theory.

Last, Plaintiff conflates the requirements of a substantive due process claim based on acts of a state actor with the more rigorous requirements for a substantive due process claim asserted against a state actor but based on acts committed by private parties. The TAC alleges that Assistant Principal Dennis Gallegos (who attended the first meeting organized by Ms. Serna) was "deliberately indifferent" to the physical safety of C.G. and other students at Carlos Vigil Middle School. TAC ¶ 108. While the deliberate indifference standard may meet general pleading requirements of liability for a governmental entity under § 1983, *see Gaylor v. Does,* 105 F.3d 572, 577 (10th Cir. 1997), it is insufficient to allege liability on the part of the School Defendants for private acts of violence under the danger creation theory.[6] Plaintiff points to

---

[6] The Tenth Circuit has held that an "act of private violence" is a "necessary precondition" to the application of the state-created danger theory:

> The state-created danger theory indulges the legal fiction that an act of private violence may deprive the victim of this constitutional guarantee. Before the fiction may operate, however, a

14

*Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010) for support in contending that the relevant inquiry for G.C.'s substantive due process claim is whether School Defendants acted with deliberate indifference.  *See* Doc. 277 at 13-14.  Plaintiff's reliance on *Dodds* is misplaced because the plaintiff in that case alleged violations of his substantive due process rights by a county sheriff—a state actor—in refusing to allow him to post bail and detaining him for three days.[7]

Thus, the Court finds that Plaintiff C.G. has not sufficiently alleged a substantive due process claim under *Iqbal* and *Twombly*.  The Court makes these findings based on the allegations in the Third Amended Complaint, and viewing the facts favorably to Plaintiff.  In coming to the conclusion that Plaintiff C.G. does not allege a viable substantive due process theory, the Court is nevertheless keenly aware of the disturbing changes taking place in the public schools and joins with the sentiment expressed by Judge Moore in the Tenth Circuit:

> state actor must create the danger or render the victim more vulnerable to the danger that occasions the deprivation of life, liberty, or property.  The *danger* that the state actor creates or enhances must be differentiated from the *harm* that the private party inflicts. Under the state-created danger theory, a constitutional deprivation is *dependent* on a private act that deprives the victim of life, liberty, or property, even though private action itself is never cognizable under § 1983.  The state actor's affirmative act creating the danger or rendering the victim more vulnerable to it does *not* constitute a constitutional deprivation.

*Gray v. University of Colorado Hosp. Authority*,  672 F.3d 909, 927 -928 (10th Cir. 2012) (emphasis supplied in original). Further, "not just any private will suffice."  *Gray,* 672 F.3d at 928.  The Tenth Circuit describes the underlying "private act" as "a violent one" involving some degree of deliberateness.  *Id.* ("This is because the harm associated with a negligent act is never constitutionally cognizable under the Due Process Clause. . . .").

[7]    *Dodds* also addressed the status of supervisory liability claims brought under § 1983 after the United States Supreme Court decided *Iqbal.*  614 F.3d at 1199.  In *Dodds,* the Tenth Circuit concluded that a basis for supervisory liability theory survives *Iqbal,* specifically, where a defendant-supervisor "creates, promulgates, implements, or . . . possesses responsibility for the continued operation of a policy" that deprives a plaintiff of his constitutional rights.  *Dodds*  614 F.3d at 1199.  However, the Tenth Circuit did not address what state of mind was required to establish the alleged constitutional deprivation.  Instead, the court assumed, without deciding, that deliberate indifference constitutes the required state of mind given *Iqbal's* stricter liability standard.  *Id.*

In their reply, Defendants respond to Plaintiff's comments regarding supervisory liability claims, and argue that supervisory liability claims do not survive *Iqbal*.  Doc. 295 at 7-9.  There is much to be said for this position, and *Dodds* acknowledges the lack of agreement on this issue.  However, the Court does not see the relevance of supervisory liability claims to this case.  Based on the claims chart attached as an exhibit  to the TAC, Plaintiffs are not alleging supervisory liability claims under § 1983. Moreover, such claims belong to a different category than the substantive due process claims which seek to make state actors liable for the violent acts of third parties.

> We are poignantly aware of the seeming transformation of our public schools from institutions of learning into crucibles of disaffection marred by increasing violence from which anguish and despair are often brought to homes across the nation. Yet, defendant school districts neither entered into a custodial relationship with their students, nor did they create or augment the danger posed by the aggressors. Therefore, as the law unquestionably mandates, we affirm the district court's orders dismissing plaintiffs' claims.

*Graham,* 22 F.3d at 992-993.

### V.     *Monell* Claim

The Court defers ruling on C.G.'s *Monell* claims which allege that the Defendant School Board is liable for violations of C.G.'s constitutional rights.  School Defendants have filed a separate motion to dismiss *all* of Plaintiffs' municipal liability claims, and the Court will consider the issue at a later time.

### CONCLUSION

In sum, I find and conclude that the School Defendants' motion to dismiss shall not be converted to a motion for summary judgment.  The Court defers ruling on Plaintiff C.G.'s municipal liability claim in Count 12 and the state constitutional claim in Count 5.  The Court GRANTS the School Defendants' motion with regard to Plaintiff C.G.'s substantive due process claim in Count 7.

Finally, the Court notes that the School Defendants request dismissal of Count 3, premised on negligence.  *See* Doc. 241 at 9 and Doc. 295 at 11.  However, as Plaintiff notes, the School Defendants' motion does not address that claim at all.  Thus, the Court DENIES the motion with regard to Count 3.

**THEREFORE,**

**IT IS ORDERED** that the School Defendants' Motion to Dismiss the Third Amended Complaint Filed by Plaintiff C.G. **(Doc. 241)** is hereby GRANTED IN PART and DENIED IN PART, in that:

1. Defendants' motion is GRANTED with regard to Plaintiff C.G.'s § 1983 substantive due process claim in Count 7 of the Third Amended Complaint;

2. Defendants' motion is DENIED as to Plaintiff's negligence claim asserted in Count 3 of the Third Amended Complaint;

3. The Court DEFERS ruling with regard to Plaintiff's claims in Count 5 and Count 12 of the Third Amended Complaint, alleging a substantive due process violation under the New Mexico State Constitution and § 1983 municipal liability under *Monell*, respectively;

4. Finally, for reasons stated in the above Memorandum Opinion and Order, the Court finds that Defendants' motion shall not be converted to a motion for summary judgment.

_____
UNITED STATES DISTRICT JUDGE