## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al.,

      Plaintiffs,

v.                                                          No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SCHOOL DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT FILED BY PLAINTIFF E.S.

THIS MATTER comes before the Court upon a Motion to Dismiss the Third Amended

Complaint Filed by Plaintiff E.S., filed on April 20, 2012 by Defendants Española Public School

District Board of Education, Dorothy Sanchez, Devanna Ortega, Lewis Johnson, and Dennis

Gallegos ("School Defendants") on April 20, 2012 (**Doc. 242**).   Having reviewed the parties'

briefs and applicable law, I find that:

- A ruling on Count 5 (substantive due process under the state constitution) is DEFERRED;

- The motion is DENIED with regard to Count 3 (New Mexico Tort Claims Act); and

- The motion is GRANTED on Counts 7, 8, 9 and 12 (Fourteenth Amendment Substantive Due Process, Equal Protection, Fourth Amendment Unlawful Arrest and Municipal Liability (*Monell*), respectively), and these claims shall be DISMISSED.

## BACKGROUND

Plaintiffs are students who were enrolled at either Española Valley High School or Carlos

Vigil Middle School in northern-central New Mexico. The Third Amended Complaint  (Doc.

196), brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract and breach of implied contract, and violations of various rights under the New Mexico and United States Constitutions.  Plaintiffs allege that the school administration is apathetic about school safety, and that Defendants have created a dangerous environment for students, and have taken little or no action to prevent attacks on students by other students.

**I.      Factual Allegations Relevant to Claims of Plaintiff E.S.**

Plaintiff E.S. ("Plaintiff" for purposes of this Order) is one of the seven student-plaintiffs in this case.   She was a female Special Education student at Española Valley High School who is blind in one eye.   In March 2009, when she was just fifteen years old, E.S. reported that she had sexual intercourse multiple times with Defendant Security Guard Jason Archuleta, a Big Ross Security Guard at Española Valley High School.   On March 28, 2009, E.S.'s mother filed a statutory rape complaint alleging that Defendant Security Guard Jason Archuleta, who was twenty-one years old when employed by Big Ross Security, had sexually penetrated her daughter in his car on a number of occasions.  Doc. 196, at ¶¶ 69-97.[1]

On January 10, 2009, Defendant Security Guard Jason Archuleta began talking with E.S., in the school's halls, where they had first met, while E.S. was walking with her best friend, C.C. Plaintiff E.S. and C.C. were looking for a classroom when they stopped Defendant Security Guard Jason Archuleta to ask him where the classroom was. Defendant Security Guard Jason Archuleta purported did not know where the classroom was located.  Doc. 196, at ¶¶ 72-73.

On or around January 21, 2009, C.C. and E.S. decided to go to class late for their last class of the day.  Defendant Jason Archuleta stopped the two girls as they were walking around

---

[1]   This factual narrative is from Plaintiffs' response, Doc. 278 at 3-5, which tracks the allegations in the Third Amended Complaint, ¶¶ 68-97.

the school and informed them that the cameras saw them outside of class and their choices were to go to class or in-school suspension. C.C. chose in-school suspension and Defendant Jason Archuleta told E.S. that she had to go too.  Defendant Jason Archuleta led the girls to the in-school suspension room, E.S. entered the room, but Jason Archuleta took C.C. out to the hall. When C.C. came into the room, E.S. asked C.C. what was going on and she said that Defendant Security Guard Jason Archuleta had asked for E.S.' phone number.  Since E.S. did not have a phone, C.C. gave Defendant Security Guard Jason Archuleta her number because he said that he wanted to text E.S. while she was in in-school suspension.  Doc. 196, at ¶¶ 74-80.  Defendant Archuleta began to text E.S. on her friend's cell phone and he saw E.S. almost every day on her way to class.  C.C. would lend E.S. her phone during the day and E.S. would return it to her friend at the end of the school day.  E.S. began skipping class to hang out with Defendant Jason Archuleta during school hours.  Sometimes Defendant Jason Archuleta would come and pull E.S. out of class so they could hang out.  Doc. 196, at ¶¶ 81-84.

One day E.S. missed the bus and she saw Defendant Jason Archuleta standing by the student pick up, so she went over to ask if she could use his phone.  Defendant Archuleta asked her why she needed the phone and she explained that she needed to call her cousin to pick her up because she missed the bus.  Defendant Archuleta told E.S. that he could give her a ride, but she would have to wait until his shift was over at 4:00pm.  E.S. accepted the ride and invited C.C. to go with her.  Both students got into Defendant Archuleta's car.  C.C. was dropped off at her house first and then he took E.S. to his home.  Doc. 196, at ¶¶ 85-91.

Defendant Big Ross Security employed Defendant Jason Archuleta between December 2008 and March 2009 and assigned him to provide security at Española Valley High School. Defendant Archuleta was fired in March 2009 after the Athletic Director saw him wrestling with

some students in the gym.   Plaintiff E.S. alleges that Defendant Archuleta used his position as a Security Guard to gain access to E.S., and to use her for his own sexual gratification. As a result of Defendant Jason Archuleta's sexual exploitation of E.S., she has suffered severe psychological injuries.

## II.     Legal Standard

The School Defendants (or "Defendants," for purposes of this Order) have raised the defense of qualified immunity, which then requires that the Plaintiff bear a heavy two part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct.  *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir.2007). If a plaintiff meets this burden, the defendant must then satisfy the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content. *See Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. 1955, 1965 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Id.* (internal quotations omitted). When considering and addressing a Rule 12(b)(6) motion, a court must accept as true all factual allegations pleaded in the entire complaint, view those allegations in the light most favorable to the plaintiff , and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir.2009). This Court uses this same standard in addressing the qualified immunity question. That is, the Court must "construe the allegations in the complaint and any reasonable inferences to be drawn from them in favor of [the] plaintiff." *Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir.1998).

## DISCUSSION

Defendants move to dismiss the following claims. The individual counts are referenced with Arabic numbers in order to remain consistent with the claims chart provided by Plaintiffs (Doc. 196-1):

- Count 3 -  negligence under the New Mexico Tort Claims Act;

- Count 5 – substantive due process under the New Mexico Constitution, Art. II, § 18;

- Count 7 – Fourteenth Amendment substantive due process;

- Count 8 – Equal Protection;

- Count 9 – Fourth Amendment unlawful seizure; and

- Count 12 – *Monell* claim against the School Board.[2]

The parties defer their arguments for Count 5, regarding substantive due process claims brought under the New Mexico Constitution, for the Court's later consideration in a separate

---

[2]  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

briefing package.  *See* Doc. 249 (Defts' Mot. to Dism. Pltffs' Claims for Equitable Relief Under the NM  Const.).   Therefore, the Court defers ruling on this claim.

Plaintiff E.S. also alleges § 1983 claims of substantive due process, equal protection, unlawful seizure and excessive force (Counts 7, 8, 9 & 10) against Defendant security guard Jason Archuleta, which the Court previously dismissed on the basis that private security guards are not "state actors" for purposes of § 1983.  *See* Docs. 324 & 325).  The Court also previously dismissed Plaintiff's breach of contract claims asserted against Big Ross (*see* Doc. 268).

## I.      Tort Claims Act (Count 3)

In Count 3, Plaintiff alleges claims against the School Board brought under the New Mexico Tort Claims Act,  N.M.S.A. 1978 § 41-4-1 to § 41-4-27.   These claims, based on the false imprisonment and sexual battery by Defendant Jason Archuleta, are brought pursuant to NMSA 1978, § 41-4-6.  That section waives governmental immunity for claims of ". . . bodily injury, wrongful death or property damaged caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  NMSA 1978, § 41-4-6.   The waiver applies if the negligent "operation or maintenance" creates a dangerous condition that threatens the general public or a class of users of the facility at issue.  *Espinoza v. Town of Taos*, 120 N.M. 680, 683 (1995).  Defendants contend that Plaintiff has failed to identify a waiver of sovereign immunity under the Tort Claims Act because § 41-4-6 does not encompass the type of injuries claimed by Plaintiff.   Specifically, Defendants argue that E.S. has not suffered a "bodily injury" as required by the plain language of § 41-4-6, but suffered only "severe psychological injuries as a result of Defendant Archuleta's sexual exploitation" (Doc. 196, ¶ 94), and thus has not alleged a claim that comes under a waiver.

Defendants rely on interpretations of language in insurance contracts to argue that Plaintiff's psychological injuries cannot be viewed as "bodily injury" for purposes of the Tort Claims Act.   This argument has no merit.  Defendants completely overlook the nature of the Plaintiff's alleged injury, as well as references to personal and bodily injure which are included in the complaint.  The Court agrees with Plaintiff's description of E.S.'s injuries as mostly sexual in nature, and which eventually caused some of her psychological injuries.  *See* Doc. 196, at ¶ 94 ("E.S. suffered severe psychological injuries as a result of Defendant Jason Archuleta's [physical] sexual exploitation of her"); Doc. 196, at ¶¶ 69, 70 (engaging in sexual intercourse); (referencing "penetration" of E.S. by Jason Archuleta); ¶ 97 ("bodily integrity").

While the Tort Claims Act does not specifically define bodily injury, the Court finds that Plaintiff's alleged injuries come within the waiver of immunity in § 41-4-6.  In § 41-4-6, immunity is waived for immunity "for personal or bodily injury resulting from assault or battery caused by law enforcement officers acting within the scope of their duties."   New Mexico law has interpreted § 41-4-6 broadly "to protect private citizens from the consequences of dangerous conditions created by public employees in the "operation and maintenance" of public facilities." *See Bober v. N.M. State Fair*, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991) (motorist injured in collision with vehicle at state fairgrounds).  While § 41–4–6 may appropriately be termed a "premises liability" statute, the liability envisioned by that section is not limited to claims caused by injuries occurring on or off a certain "premises," as the words "machinery" and "equipment" reveal.  Moreover, liability is predicated not only on "maintenance" of a piece of publicly owned property, such as a building, park, or item of machinery or equipment, but it also arises from the "operation" of any such property.  In *Castillo v. County of Santa Fe*, the New Mexico Supreme Court stated that § 41-4-6  contemplate[s] a waiver of immunity where due to the alleged

negligence of public employees an injury "arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." 107 N.M. 204, 205 (1988) (holding that the county's failure to respond to a pack of dogs roaming a public housing facility created a dangerous condition to residents and their invitees, and fell under the waiver); *Leithead v. City of Santa Fe*, 123 N.M. 353 (Ct. App. 1996) (failure by a public swimming pool to provide an adequate number of capable lifeguards created a dangerous condition arising out of the operation of the pool).  As these cases demonstrate, the dangerous condition need not be limited to the confines of the building, but can include the grounds surrounding and linked to the structure.  In the instant case, Plaintiff E.S. has clearly alleged injuries resulting from the School Board's failure to maintain the school environment in a manner that would keep students safe. Therefore, Defendants' motion is denied on this ground.

## II.      Fourteenth Amendment Substantive Due Process (Count 7)

Defendants contend that Plaintiff E.S. has not alleged a cognizable substantive due process claim under the Fourteenth Amendment.  Plaintiff alleges this claim against both Defendant Jason Archuleta and the School Board.  In her response, Plaintiff starts out by stating that the substantive due process claim alleged by E.S. is "unique" from other Plaintiffs' substantive due process claim, and bypasses the usual *DeShaney* analysis because Defendant Jason Archuleta is considered a "state actor" for purposes of § 1983.

The "state action" requirement is a jurisdictional requisite for a § 1983 action which avoids imposing on the state, its agencies or officials responsibility fo conduct for which they cannot fairly be blamed.  *Jojola v. Chavez,* 55 F.3d 488, 492 (10th Cir. 1995).   In *DeShaney v. Winnebago County Dep't of Social Servs*., 489 U.S. 189 (1989), the United States Supreme Court examined the requirements concerning the "special relationship" theory which creates an

affirmative duty on the part of the State to provide protection to an individual when that individual is taken into custody by the State and holds that person where against his will.

Plaintiff's position on this claim is premised entirely on the notion that Defendant Archuleta is a "state actor."   However, the Court has recently ruled on this issue against Plaintiff, finding that Defendant Archuleta, along with the other security guards, are not "state actors" for purposes of § 1983 under any of the tests for the presence of state action by private parties.  *See* Doc. 324.   In addition, the Court recently dismissed Plaintiff E.S.'s § 1983 claims against Defendant Jason Archuleta, including a claim for Fourteenth Amendment substantive due process.[3]  These previous rulings mean that Plaintiff cannot rely on Defendant Archuleta's conduct as a state actor in alleging an underlying constitutional violation.[4]  Instead Plaintiff E.S. is left with only one option, and that is to allege that the School Board is liable for violent acts of third parties, even though the general rule that state actors are liable only for their own acts.

---

[3]   The Court ruled on the issue before the instant motion was filed, and thus, Plaintiff did not have the advantage of knowing the Court's ruling at the time the response was filed to this motion.   The Court points out that the Memorandum Opinion and Order in Doc. 325 dismisses Count 7, but does not mention "substantive due process" in the decretal language.   Conversely, the decretal language dismisses E.S.'s excessive force claim but omits reference to "Count 10."   It should be clear, based on the analysis, and the decretal language itself, as well as the Court's previous rulings in Doc. 324, that the Court has dismissed Plaintiff E.S.'s Fourteenth Amendment substantive due process language in Count 7 against Defendant Archuleta.

[4]   Plaintiff asserts both substantive due process and equal protection claims in Counts 7 and 8 against the School Board, as well as municipal liability claims in Count 12.   Plaintiffs' intentions regarding Counts 7 and 8 are not entirely clear.   The Court assumes that Counts 7 and 8 are not asserted directly against the School Board—since the Board is an entity—but rather serve as the bases for alleged constitutional violations that form the basis for Plaintiff's municipal liability claims in Count 12.   The Court agrees with Defendants that  it appears as though Plaintiffs wish to hold the School Board liable on a finding that Jason Archuleta violated E.S.'s substantive due process rights.   Even if Archuleta were a state actor, a finding of liability on the part of the School Board would have to be based on the actions of the Board by way of custom of policy, and not merely on Archuleta's conduct. *See Monell*, 436 U.S. at 694 (municipality may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees).

In addressing the merits of a substantive due process claim asserted by one of the other Plaintiffs, Plaintiff C.G., the Court embarked on a detailed analysis on when the State (or in this case, the School Board) may be held responsible for violent acts of third parties.  *See* Doc.  330 at 5-16.  A brief summary of the Court's findings is adequate.  The "special relationship" doctrine exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection.  The "danger creation" theory provides that a state may be liable for an individual's safety "if it created the danger that harmed the individual."  Id. (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995));  *DeShaney*, 489 U.S. at 199-200.  Looking to Tenth Circuit precedent, this Court noted that compulsory school attendance has been found insufficient to create a "special relationship" for the purpose of triggering an affirmative duty to provide protection to an individual.  Thus, Plaintiff C.G. (and by inference, other Plaintiffs in this lawsuit), could not rely on the special relationship theory to allege a substantive due process claim under the Fourteenth Amendment.  Doc. 330 at 6.  Plaintiff C.G.'s only recourse was, as it is here with Plaintiff E.S., to allege a cognizable substantive due process claim under a "danger creation" theory.

Under Tenth Circuit precedent, a school's alleged failure to take action designed to ensure the student's safety "in the face of known dangers" does not create a basis for liability under the danger creation theory.   Even the foreseeability of harm cannot create an affirmative duty to protect without the existence of a custodial relationship (which the Court has found that, as a matter of law, does not exist here), or without an affirmative act on the part of the school officials putting the student in danger.  Doc. 330 at 8-9 (citing *Graham v. Independent School Dist. N . I-89*, 22 F.3d 991 (10th Cir. 1994) and *Gray v. Univ. of Colo. Hosp. Authority,* 672 F.3d 909, 916 (10th Cir. 2012).   As the Court recently found with respect to Plaintiff C.G.'s

substantive due process  claim, Plaintiff E.S.'s assertions are based entirely on the School

Defendants' inaction, or failure to take appropriate action.   E.S.'s mother filed a statutory rape

charge concerning this conduct after it occurred.  There is no indication of knowledge on the part

of the School Defendants, much less any affirmative action taken, with regard to Jason

Archuleta's conduct toward Plaintiff E.S. prior to that point.

In order to satisfy the Tenth Circuit standard for a Fourteenth Amendment violation

based on a danger creation theory, Plaintiffs have resorted to framing the allegations in the

complaint to make it appear as though School Defendants took affirmative actions.  However,

the Court agrees with Defendants' description of these attempts as "syntactic sleight of hand."

Doc. 242 at 9.   For example, Plaintiffs allege that Defendants "actively resisted," "refused to

institute an effective complaint mechanism," and "refused to adequately discipline offending

security guards.  Doc. 196, ¶ 363.   Despite this language, Plaintiffs allege negligent acts rather

than affirmative acts which could support a claim under the Fourteenth Amendment.  *See, e.g.,* ¶

364 ("Defendants' failure to act in the face of such knowledge creates and/or enhances the risk of

harm and demonstrates deliberate indifference to the danger faced by Plaintiffs. . . ."). [5]

A good contrast to the allegations presented in this case can be found in the Tenth Circuit

case, *In Armijo By and Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262-63

(10th Cir. 1998) ("*Wagon Mound*").  In that case, a special education student at a public school

committed suicide after being suspended and driven home without parental notification.  The

*Wagon Mound* court stated that the "key" to the state-created danger cases

---

[5]   The Court adds here that allegations of a failure to train or act might well constitute the basis for a *Monell* claim where and there is an underlying constitutional violation by a state actor.  Because the underlying conduct for the *Monell* claim was performed by a non-state actor in this case, Plaintiff can successfully allege a substantive due process claim only if based on a danger creation theory, which requires an affirmative act on the part of the School Board.

> lies in the state actors' culpable knowledge and conduct in affirmatively placing
> an individual in a position of danger, effectively stripping a person of her ability
> to defend herself, or cutting off potential sources of private aid. Thus the
> environment created by the state actors must be dangerous; they must know it is
> dangerous; and, to be liable, they must have used their authority to create an
> opportunity that would not otherwise have existed for the third party's [acts] to
> occur.

*Wagon Mound*, 159 F.3d at 1263 (citation omitted).  Thus, in order to allege a substantive

due process claim against the School Defendants, Plaintiff E.S. must allege some kind of

restraint of her freedom to act on her own behalf.  *See id.* (substantive due process

analysis rests on showing of affirmative act to restrain individual's freedom to act rather

than a failure to protect the individual's liberty interests against harms inflicted by other

means.).  Plaintiff E.S. does not allege facts which plausibly form the basis for such a

claim.  By comparison, the actions of the school in *Wagon Mound* are markedly

distinguishable from the alleged conduct of the School Defendants in the instant case

because  the *Wagon Mound* school (1)  suspended the student/plaintiff from school,

which caused him to become distraught and to threaten violence; (2) drove the suicidal

student to his home; and (3) left him alone with access to firearms.  The Tenth Circuit

found these actions sufficient to raise factual inferences suggesting that the school had

affirmatively placed the student in a position of danger.

Based on the foregoing, the Court finds that Plaintiff E.S. has not sufficiently alleged a

substantive due process claim against the School Defendants under *Iqbal* and *Twombly*.  The

Court makes these findings based on the allegations in the Third Amended Complaint, and

viewing the facts favorably to Plaintiff.

**III.    Fourteenth Amendment Equal Protection Claim (Count 8) and Fourth Amendment Unlawful Arrest Claim (Count 9)**

To start with, the Court notes that Plaintiffs have still not been able to present the Court with an accurate and complete chart showing the various claims asserted against by all Plaintiffs against all Defendants.  Plaintiff E.S. states in her response that she pleads a viable Fourth Amendment Unlawful Seizure claim against the School Board as well as Jason Archuleta (Doc. 278 at 20).  However, as Defendants correctly observe (*see* Doc. 242 at 13-14), the claims chart submitted by Plaintiffs (Doc. 196-1) indicates that a Fourth Amendment claim is asserted against Jason Archuleta but not against the School Defendants.  The chart also indicates that an equal protection claim is asserted against the School Board and Jason Archuleta, but not against the individual Defendants.  It is disturbing that, even after the Court has afforded Plaintiffs at least two opportunities to submit a chart of claims and parties represented in the complaint, Plaintiffs have not been able to comply with the Court's request.  *See* Docs. 125 and 187 (Order striking complaint for lack of clarity and pleading deficiencies and allowing Plaintiffs to re-file complaint).  The Court did not order the chart on a whim, but found it to be necessary in a case with numerous parties and claims and which involves complex areas of civil rights law.  The purpose of the chart was to avoid surprises for the Court as well as Defendants.

In this instance, it happens to matter little whether Plaintiff E.S. included Count 9  in the claims chart, since both the Fourth Amendment unlawful arrest and the Fourteenth Amendment Equal Protection Claim are not sufficiently alleged against either Jason Archuleta or the School Defendants (including the School Board) under *Iqbal* and *Twombly*.  Plaintiff E.S. cannot allege a § 1983 claim against Jason Archuleta based on the Court's finding that he is not a state actor.  Docs. 342 and 325.  For the same reason, Plaintiff cannot allege a *Monell* claim against the School Board, since a *Monell* claim requires an underlying constitutional violation.  In addition, because Jason Archuleta was not the employee of either the School Board or the individual

School Defendants, liability on the part of the School Defendants cannot be based on a supervisory liability theory (see discussion below under Plaintiff's *Monell* claim). As discussed above, a *Monell* claim could theoretically be asserted against the School Board based on Jason Archuleta's conduct as a private actor under the Fourteenth Amendment substantive due process claim.  To that extent, Plaintiff E.S.'s unlawful seizure and equal protection claim would be subsumed under a Fourteenth Amendment substantive due process theory.  However, the Court has already found that Plaintiff has not alleged a cognizable substantive due process claim under a danger creation theory.

Alternatively, the Court finds that Plaintiff E.S.'s unlawful arrest and equal protection claims fail under their own requirements, and addresses these claims next.

A.    Fourth Amendment Claim

The Fourth Amendment's prohibition on unreasonable searches and seizures extends to searches conducted by public school officials.  *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985).  At the same time, "while children assuredly do not 'shed their constitutional rights . . .  at the schoolhouse gate,' the nature of those rights is what is appropriate for children in school.'" *Morse v. Frederick,* 551 U.S. 393 (2007).   There is no indication, however, that any of the School Defendants, or the School Board took any action to seize Plaintiff E.S., participated in Jason Archuleta's conduct in any way, or even had any knowledge of the seduction and assault prior to it happening or at any time during the course of those events.

B.    Equal Protection Claim

Count 8 of the Third Amended Complaint states that Defendants Jason Archuleta and the School Board falsely imprisoned and sexually battered Plaintiff E.S. based on her gender, in

violation of her right to bodily integrity and a free public education.  Third Am. Compl., ¶¶ 375-382.

The Fourteenth Amendment provides that "[n]o state shall. . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799 (1997).   Equal protection claims can be based upon a suspect classification or a fundamental right. *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008).   Plaintiff premises her equal protection claim on the fact that she is both Hispanic and female and thus a member of two protected classes.

The Third Amended Complaint contains no facts which suggest an inference of discrimination by the School Defendants.  Plaintiff E.S. alleges that Defendant Archuleta "groomed" her while performing his duties as a security guard, that E.S. and Defendant Archuleta would send text messages to each other during the school day, that Defendant Archuleta would pull E.S. out of class to hang our during school hours, and that Defendant Archuleta and E.S. engaged in sexual intercourse at his house.  Doc. 196, ¶¶68-97.   None of these facts are related to Plaintiff's ethnicity.  Sexual harassment (and perhaps even sexual assault) by a state actor can constitute a violation of the equal protection clause. *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).   However, Plaintiff cannot proceed on this claim against Defendant Archuleta because he is not a state actor, and the School Board cannot be liable on a *Monell* claim without an underlying constitutional violation by a state actor.

The possibility of state action also exists where a supervisor of employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers.

*Murrell*, 186 F.3d at 1250.   The problem here is that the School Board was not in a supervisory

position over Jason Archuleta.  Plaintiff E.S.'s only remaining claim is a municipal liability or

*Monell* claim against the School Board for a failure to take adequate steps to stop Jason

Archuleta's conduct.  However, the School Board cannot be held liable for failing to *prevent*

sexual harassment before it occurs.   *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238,

1251 n.7 (10th Cir. 1999).   A refusal to remedy *known* harassment is actionable, *see id.,* but

Plaintiff E.S. has not alleged any facts which indicate that the School Board knew about Jason

Archuleta's conduct prior to the complaint lodged by Plaintiff's mother in March 2009.   The

introductory allegations by all Plaintiffs in the complaint that the School Board "knew, or should

have known, of violence toward female students by Security Guards, such as Defendant Jason

Archuleta. . . ." do not provide supportive factual content specific to Plaintiff E.S.'s equal

protection claim.   *See* Third Am. Compl., ¶ 377;[6] *see Twombly,* 550 U.S. at 544 (complaint fails

to state a claim when it makes conclusory allegations of liability without supporting factual

content).

Finally, an equal protection theory may also be brought under a "class of one" theory

where a plaintiff must allege that similarly situated persons were treated differently than plaintiff.

*Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1212 (10th Cir. 2006).  The Third

Amended Complaint makes no allegations suggesting that Plaintiff E.S. asserts such a claim.

Moreover, Plaintiff E.S. alleges no facts inferring that the School Board treated her differently

from others who are "similarly situated"—whether the "similarly situated" group is characterized

as either Hispanic/female students or special education students.

---

[6]  According to the complaint as well as the claims chart, Plaintiff does not allege an equal protection claim
against the individual School Defendants.  However, even if she had, there are no facts alleged that any of these
individuals knew of or acquiesced in Defendant Archuleta's conduct.  *See Jojola v. Chavez*, 55 F.3d 488, 490 (10th
Cir. 1995) (liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the
defendant and not upon mere negligence).

Accordingly, Plaintiff E.S. fails to set forth sufficient facts to raise a plausible inference that the School Board is liable for the misconduct alleged.

**IV.    *Monell* Claim (Count 12)**

Plaintiff E.S. has failed to assert a cognizable federal constitutional claim, under the Fourteenth Amendment Substantive Due Process Clause (Count 7) or Equal Protection Clause (Count 8); or under the Fourth Amendment (Count 9).   Without a viable constitutional violation, Plaintiff cannot assert a municipal liability, or *Monell* claim, in Count 12 against the School Board.   *See Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447 (10th Cir. 1990) (where there is no underlying constitutional violation by a county officer, there cannot be an action for failing to train or supervise the officer).

**V.    Supervisory Liability Claims**

The Court notes that the pleadings contain a few passing references to supervisory liability claims.  Plaintiff brings it up in stating the general law concerning qualified immunity. *See* Doc. 278 at 9.  Defendants refer to supervisory liability claims in the context of the Supreme Court's decision in *Iqbal*, regarding whether such claims survive after *Iqbal*.   Doc. 296 at 6.[7] Plaintiff does not allege a supervisory liability claim.  In fact, the Court sees no basis for supervisory liability claims in this case at all.  The individual School Defendants who are specifically named separately in the claims chart (Doc. 196-1) cannot be liable for the conduct of

---

[7]     *Iqbal* was a *Bivens* actions by a pretrial detainee against *individual* government officials.  The question in *Iqbal* involved the level of scienter involved for supervisory liability claims, and thus has no relevance to Plaintiff's *Monell* claims.  *See Dodds v. Richardson,* 614 F.3d 1185, 1202 (10th Cir. 2010) (noting that "[n]othing in *Iqbal* contradicts" the *Monell* standard for municipal liability under § 1983).

the security guards because there are no facts which state that the School Defendants held a supervisory position over the guards as their employees.[8]

The complaint references the "supervisory authority" of Big Ross over security guards (e.g., ¶ 309), and the School Board's failure to train and supervise (e.g., ¶ 30). The latter clearly references a *Monell* claim against an entity rather than a supervisory liability claim, which is asserted against an individual rather than an entity. Supervisory liability claims are, by their nature, based on the conduct of a subordinate. *See Dodds,* 614 F.3d at 1195 (supervisor may be liable for conduct of subordinate, although liability is not vicarious and requires some fault on part of supervisor). The Tenth Circuit has concluded that a defendant-supervisor can be liable under a supervisory liability theory where that supervisor "creates, promulgates, implements, or . . . possesses responsibility for the continued operation of a policy" that deprives a plaintiff of his constitutional rights." *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010).[9] A plaintiff asserting a supervisory liability claim under § 1983 must also assert an underlying violation of a constitutional right. Thus, any would-be supervisory claims asserted against the individual School Defendants based on actions by security guards would not be cognizable under § 1983 based on this Court's previous rulings that the security guards are not state actors for purposes of § 1983. Docs. 324 & 325.

The Court makes these observations to clarify the Court's rulings on the constitutional claims considered herein, as well as to address the references noted in the parties' pleading to "supervisory liability" claims.

---

[8]   The Court has previously remarked that supervisory liability claims did not appear to be relevant in this case, based on the claims chart. *See* Doc. 332 at 16, n.8. The Court makes no finding as to whether Plaintiffs have alleged a § 1983 claim against any of the individual School Defendants based on their own conduct, pending the Court's consideration of the other motions to dismiss.

[9]   Plaintiffs have relied on *Dodds* in previous pleadings. *See, e.g.,* Doc. 277 at 14.

**THEREFORE,**

**IT IS ORDERED** that the School Defendants' Motion to Dismiss (**Doc. 242**) is hereby

GRANTED IN PART and DENIED IN PART as follows:

- A ruling on **Count 5** regarding substantive due process claims brought under the New Mexico Constitution, will be DEFERRED for the Court's later consideration in a separate briefing package;

- The motion is DENIED with respect to **Count 3** brought under the New Mexico Tort Claims Act, with the Court finding that Plaintiff E.S. has alleged a claim sufficiently coming within waiver of immunity in the Act, NMSA 1978, § 41-4-6;

- The motion is GRANTED on **Count 7**, alleging a Fourteenth Amendment Substantive Due Process claim for reasons described in this Memorandum Opinion and Order, resulting in the DISMISSAL of Count 7;

- The motion is GRANTED with regard to **Count 8**, alleging a Fourteenth Amendment Equal Protection claim for reasons described in this Memorandum Opinion and Order, resulting in the DISMISSAL of Count 8;

- The motion is GRANTED with regard to **Count 9**, alleging a Fourth Amendment unlawful arrest claim for reasons described in this Memorandum Opinion and Order, resulting in the DISMISSAL of Count 9; and

- The motion is GRANTED on **Count 12,** alleging a municipal liability (*Monell*) claim for reasons described in this Memorandum Opinion and Order, resulting in the DISMISSAL of Count 12.

_____

UNITED STATES DISTRICT JUDGE