IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al.,

      Plaintiffs,

      v.                                                                     No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

      Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT JANETTE ARCHULETA'S MOTION TO DISMISS COUNTS 7 AND 11 OF THE THIRD AMENDED COMPLAINT

THIS MATTER comes before the Court upon a Motion to Dismiss Counts 7 and 11 of the Third Amended Complaint, filed on April 26, 2012 (**Doc. 251**) by Defendant Janette Archuleta. Having reviewed the parties' briefs and applicable law, I find that Defendant's motion is well-taken and, therefore, is granted.

### BACKGROUND

Plaintiffs are students who were enrolled at either Española Valley High School or Carlos Vigil Middle School in northern-central New Mexico. The Third Amended Complaint, brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract and breach of implied contract, and violations of various rights under the New Mexico and United States Constitutions.[1] Plaintiffs allege that the school administration is apathetic about school safety,

---

[1] The Court recently dismissed with prejudice Plaintiffs' state constitutional claims where Plaintiffs do not withstand dismissal of their federal constitutional claims. Doc. 334.

and that Defendants have created a dangerous environment for students and have taken little or no action to prevent attacks on students by other students.

## DISCUSSION

Plaintiffs' Third Amended Complaint (Doc. 196) asserts twelve causes of action against various defendants, but only two causes of action are brought against Defendant Janette Archuleta ("Defendant" or "Defendant Archuleta').[2]  In this motion, Defendant Archuleta moves to dismiss Counts 7 and 11, which assert § 1983 substantive due process violations and First Amendment retaliation, respectively.  Plaintiff C.G. alleges a violation of § 1983 substantive due process; Plaintiff S.M.G. alleges both § 1983 substantive due process in Count 7 as well as First Amendment retaliation in Count 11.

Defendant's motion also refers to Plaintiff S.M.'s claims in Count 11 against Defendant Archuleta.  *See* Doc. 251 at 3.  However, Plaintiffs' response is limited to claims asserted by Plaintiff C.G. and Plaintiff S.M.G., indicating that Plaintiff S.M. does not allege either a substantive due process or First Amendment retaliation claim against Defendant Archuleta.  This is consistent with the claims chart submitted by Plaintiffs as an attachment to the Third Amended Complaint, and which is meant to accurately represent the pending claims and parties.  *See* Doc. 196, Ex. 1 ("claims chart").

Plaintiffs request that the Court deny the motion to dismiss, and in the alternative, to convert the motion into a summary judgment motion and allow Plaintiffs an opportunity to conduct limited discovery pursuant to Fed.R.Civ.P. 56(d).  The alternative requested by Plaintiff is denied.  The Court has already found Plaintiffs' Rule 56(d) affidavit to be deficient.  *See* Docs.

---

[2]   There are two defendants with a surname of "Archuleta."  Defendant Janette Archuleta is the Española school superintendent.  Defendant Jason Archuleta was one of the security guards employed by Defendant Big Ross Security, d/b/a ProSec Services, Inc., which contracted to provide security services at the school.

326 & 328.  In addition, the Court finds there is no need to convert this motion into a summary judgment motion, thereby rendering Plaintiffs' alternative request moot.

Defendants adopt by reference other motions to dismiss.  The Court's ruling on some of these motions form the basis for some of the rulings herein.

**I.      Legal Standard**

Defendants raise the defense of qualified immunity.  Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as  their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the  alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.  The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of existing law.  *Beedle vs. Wilson*, 422 F.3d 1059 (10th Cir. 2005).  This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law.  *Id.*[3]

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

---

[3]  In light of the fact that Defendant has already filed an Answer,  Defendant  suggests that the Court treat the motion under Rule 12(c), which applies the same standard review as under Rule 12(b)(6).  *Mock v.  T.G.&Y Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

(2007)).  A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544).  The complaint must plead sufficient facts, taken as true, to provide plausible grounds that Discovery will reveal evidence to support the plaintiff's allegations. *Id.*

## II.	Substantive Due Process Claim

Both Plaintiff C.G. and Plaintiff S.M.G. have asserted a § 1983 substantive due process claim.

### A.	Plaintiff C.G.

The Court has previously set out the facts contained in the Third Amended Complaint ("TAC") as it refers to Plaintiff C.G.  Doc. 330 at 10-12).  The Court presents them here again in their entirety for context, although the salient facts for purposes of this motion are only those facts which relate to Defendant Archuleta.

According to the Complaint, C.G. was a seventh grade student at Carlos Vigil Middle School, was an athlete "and at the top of her class" in the sixth grade, but began to "struggle." TAC ¶¶ 99-100.  Members of a known Española gang targeted C.G. at school, and routinely followed C.G. around in the school hallways threatening her. TAC ¶¶ 101-102.  Andrea Serna was C.G.'s mother, and also worked as a counselor at Carlos Vigil Middle School.  She had "growing concerns for the safety of all children in the Española secondary schools," and organized a community meeting in the fall of 2009 to address this issue.  TAC ¶¶ 105-106. Defendant Assistant Principal Dennis Gallegos and Defendant Security Guard Geraldine Martinez attended this meeting, along with other concerned parents.  The Complaint alleges that school officials failed to implement any corrective action to address violence following this

meeting. TAC ¶ 107.   Plaintiff C.G. continued to be threatened by the student gang members, who told her that if she or her mother reported anything further, C.G. would get beaten. TAC ¶¶ 108-109.   Ms. Serna again met with Defendant Associate Superintendent Dorothy Sanchez in April 2010 to notify Ms. Sanchez of her "growing concerns for the safety of all children in the Española secondary schools."  Ms. Serna voiced specific complaints about finding security guards asleep at their posts, students left unattended in classrooms, and gang violence continuing unchecked. TAC ¶ 111.   Ms. Sanchez told Ms. Serna that she would pass her concerns on to Defendant Superintendent Janette Archuleta who would contact Ms. Serna to discuss these issues, but Ms. Serna never heard from Ms. Archuleta. ¶¶ 112-113.

The TAC alleges that on April 9, 2010, C.G. overheard some students say there would be a fight that day.   C.G. was struck several times from behind by C.S., another female student, and another student took a video of the attack on a cell phone.  A teacher went into the hall after the attack, saw blood on the floor, and followed it to where C.G. was laying down in the bathroom.  C.G. was taken to the school nurse, who contacted Ms. Serna.  When Ms. Serna arrived, a security guard informed her that they discovered who attacked the daughter, and that the school had suspended the student for 25 days.  Ms. Serna took her daughter to the emergency room. TAC ¶¶ 114-122.   The attack caused C.G. severe emotional distress and physical injuries, "impacting her ability to succeed in school and in life." TAC ¶ 123.

B.     Plaintiff S.M.G.

Plaintiff S.M.G. was a thirteen year-old male student attending Carlos Vigil Middle School.   The TAC alleges that S.M.G. was the victim of repeated bullying and harassing during the 2009-10 school year which included, but are not limited to the following: a student repeatedly punching S.M.G. in the face and head in a classroom with the teacher absent, no

5

substitute teacher, and no adult supervision (¶¶ 194-5); a student grabbing, shoving, and then attempting to throw S.M.G. over a ramp railing outside the school gym (¶ 218); a student grabbing S.M.G. by the neck and choking him (¶ 219); a student kneeing S.M.G. in his testicles (¶ 220).

The student's mother, Elizabeth McCall-Guinn, complained to the principal and assistant principal (Defendants Lewis Johnson and Dennis Gallegos). After the first incident of the school year, Ms. McCall-Guinn met with Defendant Archuleta to complain that students were unsupervised and that the school was tolerating bullying. Defendant Archuleta allegedly responded "I can't defend anything that happened. I'm sorry. I'll have Mr. Johnson contact you with a solution." TAC, ¶ 205. Defendant Johnson did not call Ms. McCall-Guinn until more than a month had passed, and Ms. McCall-Guinn had called Defendant Archuleta's office and left a message with the secretary. Defendant Johnson called Ms. McCall-Guin a week afterward and asked her, "You needed to speak to me"?—obviously indicating that Defendant Johnson knew nothing about the nature of Ms. McCall-Guin's complaints to Defendant Archuleta.

Some of the assaults were caught on surveillance video. TAC, ¶ 228. Ms. McCall-Guin was told she had to file her own police report, which she did. TAC, ¶¶ 199, 235-37. Charges were not brought against the student who kneed S.M.G. in the testicles, but police did arrest that student for attacking another student while repeatedly calling him "faggot." TAC, ¶ 239. According to the Complaint, the father of one of the student perpetrators of the bullying and assaults is a former police officer, and his uncle is currently employed as a police officer. TAC, ¶ 240. S.M.G.'s mother fears that the school's reluctance to press charges stems from the fact that the boy is related to police officers. TAC, ¶ 241. She also fears that video evidence of the attacks will be lost or destroyed for the same reason. TAC, ¶ 244.

6

At one point, Ms. McCall-Guinn left a detailed message with Defendant Archuleta requesting to view the videotapes of the attacks on her son, and submitted a detailed report to Defendant Archuleta expressing her concerns that her son was assaulted multiple times in a one week period and no one intervened. TAC, ¶¶ 251-252. Defendant Archuleta denied that request, claiming that the video is protected, confidential information under FERPA. TAC, ¶ 255.[4]

The Complaint alleges that S.M.G. does not report the extent of the abuse he suffers at school because he is afraid of retaliation. ¶ 268. S.M.G. states that he has "pent up aggression" and suffers from anxiety and emotional distress as a result of the abuse. TAC, ¶ 169. However, he continues to be a straight "A" student, and is currently enrolled at Los Alamos High School. He would return to Española Public School system if sufficient measures were taken to protect his constitutional rights and to ensure his safety. TAC, ¶¶ 270, 272.

C.  Analysis

It is clear from the Complaint that both Plaintiffs alleged injuries were caused by other students. The only fact connecting Defendant Archuleta with Plaintiff C.G.'s injuries is the statement that Defendant Archuleta failed to get back to Plaintiff C.G.'s mother after Ms. Serna told her she would pass along the mother's concerns. One does not know if Ms. Serna in fact ever passed along those concerns. However, even assuming she did, at best Defendant Archuleta's conduct at issue here is that she failed to get back to Ms. Serna about her daughter's incident. With regard to Plaintiff S.M.G, Defendant Archuleta is alleged to have been derelict in communicating Ms. McCall-Guin's concerns to Defendant Johnson, and to have refused to provide Ms. McCall-Guin with the videotape of the attacks on her son.

---

[4] The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, protects the privacy of student education records.

The Court previously undertook a detailed analysis in addressing the merits of Plaintiff C.G.'s substantive due process claim asserted against the School Defendants.[5]  *See* Doc. 330 at 5-16.   That analysis is applicable to the substantive due process analysis required here.  The due process clause does not transform every tort committed by a state actor into a constitutional violation.  *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 196-97 (1989).  A substantive due process claim must be predicated on "reckless or intentional injury-causing state action which 'shocks the conscience.'" *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995), cert. denied, 516 U.S. 1118 (1996).  However, as the Court has previously noted, state actors such as Defendant Archuleta are liable only for their own acts, and not for the violent acts of third parties.  *See  Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).  There are two exceptions to this general rule.  First, the "special relationship" doctrine exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection.  Second, the "danger creation" theory provides that a state may be liable for an individual's safety "if it created the danger that harmed the individual." *Id*. (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)); *DeShaney,* 489 U.S. at 199-200.  Both Plaintiffs are alleging their substantive due process claims under the danger creation theory only.  Doc. 286 at 13.[6]

The Tenth Circuit has held that a school's alleged failure to take action designed to ensure the student's safety "in the face of known dangers" does not create a basis for liability under the danger creation theory.  *Graham v. Independent School Dist. No. I-89*, 22 F.3d 991 (10th Cir. 1994).  Even the foreseeability of harm cannot create an affirmative duty to protect

---

[5]  The "School Defendants" are the  Española Public School District Board of Education, Dorothy Sanchez, Devanna Ortega, Lewis Johnson, and Dennis Gallegos.

[6]  The Tenth Circuit has held that compulsory school attendance law "do not spawn an affirmative duty to protect under the fourteenth Amendment." *Graham v. Indep. Sch. Dist. No. 1-89*, 22 F.3d 991, 994 (10th Cir. 1994).

without the existence of a custodial relationship, or without an affirmative act on the part of the school officials putting the student in danger. *Id*. at 994. The Tenth Circuit recently reaffirmed its holdings in *Graham* in the case of *Gray v.University of Colorado Hosp. Authority*, 672 F.3d 909, 916 (10th Cir. 2012):

> At this early stage [in *Graham*], we placed an important limitation on the state created danger theory consistent with *DeShaney*. We established "[t]his state created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Id*. (internal quotations omitted) (emphasis added). We expressly "h[e]ld foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship." *Graham*, 22 F.3d at 994. "[I]naction by the state in the face of a known danger is not enough to trigger the obligation" unless the State has limited in some way the liberty of a citizen to act on his own behalf." . . . *Id*. at 995 (internal quotations omitted).

*Gray*, 672 F.3d at 916; *see also* Doc. 330. Thus, in order to sufficiently allege that Defendant Archuleta violated Plaintiffs' substantive due process rights, she must allege facts consistent with affirmative conduct that put Plaintiffs in danger. The TAC does not allege such facts. With regard to Plaintiff C.G., Defendant Archuleta allegedly did not respond back to C.G.'s mother about her concerns, assuming that Ms. Serna relayed the message. Plaintiff S.M.G. alleges that Defendant Archuleta did not communicate the concerns of Plaintiff S.M.G.'s mother to Defendant Johnson, and did so only after weeks had passed. This conduct can best be described as unconcerned and negligent, but does not constitute the affirmative conduct that is necessary to assert a substantive due process claim. Therefore, the substantive due process claims asserted in Count 7 against Defendant Archuleta by Plaintiffs C.G. and S.M.G. is dismissed.

    D.    <u>Other Claims</u>

Both Plaintiffs maintain claim they have alleged a substantive due process claim based on allegations that Defendant Archuleta (along with other named Defendants in Count 7) failed to

9

adopt or implement policies to prevent bullying and harassment; failed to train those under her supervision; failed to take action to identify or seek the removal of the security guards responsible for some of the safety violations and assaults; and failed to provide a grievance procedure for parents or children.  *See* Doc. 196, ¶¶ 361-374 & Doc. 286 at 12.   Plaintiffs argue that Defendant Archuleta is responsible for Defendants School Board and the school administrators in taking no efforts to stop the violence against the students.  However, as Defendants note (*see*  Doc. 315 at 8), these claims are more accurately characterized as claims that Defendant is liable for the actions of other EPS employees or the Big Ross security guards, rather than substantive due process claims.[7]

Plaintiffs conflate the substantive due process claims at issue here with supervisory liability claims. A supervisor may be individually liable for failing to adopt or implement policy or training of subordinates to prevent deprivations of constitutional rights.  *See Sutton v. Utah State Sch. for the Deaf and Blind,* 173 F.3d 1226 (10th Cir. 1999).   Supervisory liability claims are, by their nature, based on the allegedly unconstitutional conduct of a subordinate.  *Dodds v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010) (supervisor may be liable for conduct of subordinate, although liability is not vicarious and requires some fault on part of supervisor).  In this case, the Court has precluded any supervisory liability claim based on the conduct of the security guards for the failure to provide a safe environment with the ruling that the Big Ross security guards are not state actors for purposes of § 1983.   *See*  Docs. 324 & 325.  Thus, the Court's findings here that Plaintiffs C.G. and S.M.G have not asserted substantive due process claims, and the Court's previous ruling that Big Ross security guards are not liable to Plaintiffs

---

[7]  The Court has noticed other instances where Plaintiffs conflate the allegation of a substantive due process claim with a supervisory liability claim.  *See* Doc. 330 at 15, n.7.

under § 1983, also require the dismissal of any supervisory liability claims against Defendant Archuleta.

## III. First Amendment Claim

Generally speaking, government action "which chills constitutionally protected speech or expression contravenes the First Amendment." Wolford v. Lasater, 78 F.3d 484, 488 (10th Cir. 1996). The pertinent legal standard for a First Amendment claim in a non-employment context is set out as follows in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), *cert. denied*, 533 U.S. 916, (2001): (1) plaintiff was engaged in constitutionally protected activity; (2) defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Worrell,* 219 at 1212.

The Court makes no finding here as to whether Plaintiffs engaged in protected activity, or whether the fact that Plaintiffs' mothers made the complaints means that Plaintiffs themselves did not engage in protected activity.[8] Even assuming that Plaintiffs' claims satisfy the first *Worrell* prong, they fail on the others. Plaintiffs fail to allege any retaliatory action on the part of Defendant Archuleta, nor do they allege facts which suggest that an adverse action occurred or was motivated by the complaints made by Ms. Serna and Ms. McCall-Guin. In the response, Plaintiffs describe various actions or inactions by the different named Defendants as retaliation under the First Amendment, but none of these are sufficient under the *Iqbal-Twombly* standard. For example:

---

[8] There seems to be some basis to consider that a parent's activities on behalf of a minor child could constitute protected activity by the child. *See, e.g. Cain v. Tigard-Tualatin School Dist. 23J*, 262 F.Supp.2d 1120 (D.Or.,2003) (finding that protected speech made by third parties who were parents of minor came under reach of First Amendment based on freedom of association). However, the parties have not presented the Court with a sufficient development of this issue to allow the Court to make a determination on the issue.

11

(1)     Defendant Gallegos' statement that he would "deal with it" [Ms. Mc-Call-Guin's complaints] as soon as he could. TAC, ¶ 223;

(2)     Ms. McCall-Guin being told that all the administrators at Carlos Vigil Middle School were "out for the day." TAC, ¶ 227-33; and

(3)     Defendants' failure to take any corrective action to address violence after the complaints or after the parents' visits to the school. TAC, ¶ 107.

Plaintiffs cannot allege the bullying and harassing as the retaliatory or adverse conduct because it is the same conduct that Plaintiffs initially complained of.   There are no allegations that, following complaints made by Ms. Serna and Ms. McCall-Guin, the bullying and harassment escalated or that Defendants Archuleta (or any of the Defendants, for that matter) caused any of the bullying and harassing to continue.

Moreover, Plaintiff S.M.G. identifies the "motive" behind the alleged retaliation as the fact that the uncle of one of the student perpetrators is a police officer.  *See* Doc. 286 at 20. Under the *Worrell* standard, the motive must be alleged to be a plaintiff's exercise of constitutionally protected conduct, not a bias or favoritism toward another individual.

Plaintiff S.M.G. asserts that he did not report the extent of the abuse because "he is afraid of retaliation." Doc. 196 at ¶ 268.   This allegation does not support a First Amendment retaliation claim.  First, S.M.G. does not allege that he fears retaliation from Defendant Archuleta, or any of the Defendants.  The only actual retaliatory threats and chilling effects alleged in the Complaint were made by other students, *see* Doc. 196, ¶¶ 109, 224, and there are no facts alleged which connect those threats with any actions taken by Defendant Archuleta or the other Defendants.  Second, the mere statement that S.M.G. feared retaliation is not enough to allege a First Amendment claim; none of the other eighty-seven allegations stated by S.M.G. suggest that either his actions, or his mother's complaints, were discouraged or chilled by any of

the Defendants' actions.[9]  The Complaint alleges no plausible connection between complaints made by Ms. Serna and Ms. McCall-Guin and the alleged bullying and assaults suffered by Plaintiffs.  Nor do the alleged facts suggest that the complaints were "chilled" or discouraged because of any actions taken by Defendants.  If anything, the Complaint alleges that Defendants took no action or insufficient action *despite* the complaints, not *because* of them.

Plaintiffs' allegations of Defendants' failures to take action against the bullying and harassing describe conduct which is improper and negligent, but the *Worrell* standard requires an "adverse action"—not a failure to act—to be actionable under the First Amendment.  Accordingly, neither Plaintiff alleges a First Amendment claim under *Worrell* against Defendant Archuleta.

## CONCLUSION

In sum, the Court finds and concludes that neither Plaintiff C.G. nor Plaintiff S.M.G. has sufficiently alleged a substantive due process claim in Count 7 under a danger creation theory, as required under the *Iqbal-Twombly* standard.  Thus, Count 7 is dismissed as alleged against Defendant Archuleta by these Plaintiffs.

Further, the Court finds that neither Plaintiff C.G. nor Plaintiff S.M.G. sufficiently alleges a First Amendment claim under *Worrell* under *Iqbal-Twombly* against Defendant Archuleta, and therefore Count 11 of the TAC as asserted by these Plaintiffs against Defendant Janette Archuleta, is dismissed as well.

**THEREFORE,**

---

[9] Here again, the Court assumes without finding, that the complaints made by S.M.G.'s mother would qualify as protected activity by S.M.G.

**IT IS ORDERED** that Defendant Janette Archuleta's Motion to Dismiss Counts 7 and 11 of the Third Amended Complaint **(Doc. 251)** is hereby GRANTED for the reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE