IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al.,

    Plaintiffs,

v.                                                        No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT FILED BY PLAINTIFF G.T. REGARDING FOURTEENTH AMENDMENT SUBSTANTIVE AND PROCEDURAL DUE PROCESS AND *MONELL* CLAIMS (COUNTS 6, 7 AND 12)**

       THIS MATTER comes before the Court upon a Motion to Dismiss the Third Amended Complaint Filed by Plaintiff G.T., filed on April 20, 2012 by Defendants Española Public School District Board of Education, Dorothy Sanchez, Devanna Ortega, Lewis Johnson, and Dennis Gallegos ("School Defendants") **(Doc. 243)**. Having reviewed the parties' briefs and applicable law, I find that Defendants' motion is well-taken and shall be granted in that Plaintiff G.T.'s claims of Fourteenth Amendment substantive and procedural due process, and *Monell* claims (Count 6, 7 and 12) shall be dismissed.

BACKGROUND

       Plaintiffs are students who were enrolled at either Española Valley High School or Carlos Vigil Middle School in northern-central New Mexico. The Third Amended Complaint (Doc. 196), brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract and breach

of implied contract, and violations of various rights under the New Mexico and United States Constitutions.  Plaintiffs allege that the school administration is apathetic about school safety, and that Defendants have created a dangerous environment for students, and have taken little or no action to prevent attacks on students by other students.  The instant motion seeks to dismiss certain claims that are alleged against the School Defendants.

**I.      Alleged Facts Relevant to Plaintiff G.T.**

Plaintiff G.T. was a seventeen year-old girl who was in Special Education classes at Española Valley High School ("Española").  The facts, according to the Third Amended Complaint (Doc. 196) are as follows.

.132.   In December 2009, G.T. got into a fight with another girl at Española Valley High School.

133.    Security Guards separated the girls. When G.T. began to walk away, Defendant Security Guard John Doe carried her to the school's Teen Center.

134.    Once at the Teen Center, Defendant John Doe held G.T.'s arms behind her back causing G.T. extreme pain.

135.    As G.T. attempted to relieve the pain and pressure, Defendant John Doe applied even more pressure to her arms, causing extreme pain and distress to G.T.

136.    Defendant Assistant Principal Devanna Ortega insisted that law enforcement arrest G.T.

137.    Defendant Police Officer Bryan Martinez arrived at the Teen Center and restrained G.T. on the floor.

138.    G.T.'s parents were called to the school.

139.    G.T.'s parents asked Defendant Bryan Martinez if he knew that G.T. had a Behavioral Intervention Plan (BIP).

140.    Defendant Bryan Martinez told the parents, "None of that matters to us. What is that? What is her disability?"

141.    G.T.'s parents explained that G.T. suffers from ADHD and defiant opposition disorder.

142.    Defendant Bryan Martinez waited for instructions from a Juvenile Probation and Parole

Officer ("JPPO").

143.    Based on the information provided by these Defendants, the JPPO's office told Defendant Bryan Martinez to arrest G.T.

144.    Defendant Bryan Martinez handcuffed G.T. and took her to the police station.

145.    The police took G.T. to the Española hospital for a physical exam and then took her to the Santa Fe County Detention Center.

Doc. 196.

## II.     Legal Standard

Plaintiff requests that the Court deny the motion to dismiss, and in the alternative, convert the motion into a summary judgment motion and allow Plaintiff an opportunity to conduct limited discovery pursuant to Fed.R.Civ.P. 56(d).   The alternative requested by Plaintiff is denied.  The Court has already found Plaintiff's Rule 56(d) affidavit to be deficient.  *See* Docs. 326 & 328.   In addition, the Court finds there is no need to convert this motion into a summary judgment motion, thereby rendering Plaintiff's alternative request moot.

Defendants raise the defense of qualified immunity.  Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as  their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*  The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of existing

law. *Beedle vs. Wilson*, 422 F.3d 1059 (10th Cir. 2005). This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Id*.

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id.*

## DISCUSSION

In the instant motion, Defendants move for dismissal of various claims asserted by Plaintiff G.T.

**I.      Waiver of Certain Claims Argued by Plaintiff G.T.**

The Third Amended Complaint (Doc. 196) states that G.T. asserts various state and federal claims against certain Defendants. The first thing the Court notices is that there is still some confusion on the part of both parties regarding which claims are asserted against specific Defendants. This confusion is not justified, given the particular pains the Court took to clarify all of this. This confusion has infiltrated other pending motions addressed by the Court, for example, the pleadings associated with Defendants' motion to dismiss Plaintiff E.S.' claims:

> To start with, the Court notes that Plaintiffs have still not been able to present the Court with an accurate and complete chart showing the various claims asserted

> against by all Plaintiffs against all Defendants. Plaintiff E.S. states in her response
> that she pleads a viable Fourth Amendment Unlawful Seizure claim against the
> School Board as well as Jason Archuleta (Doc. 278 at 20). However, as
> Defendants correctly observe (see Doc. 242 at 13-14), the claims chart submitted
> by Plaintiffs (Doc. 196-1) indicates that a Fourth Amendment claim is asserted
> against Jason Archuleta but not against the School Defendants. The chart also
> indicates that an equal protection claim is asserted against the School Board and
> Jason Archuleta, but not against the individual Defendants. It is disturbing that,
> even after the Court has afforded Plaintiffs at least two opportunities to submit a
> chart of claims and parties represented in the complaint, Plaintiffs have not been
> able to comply with the Court's request. See Docs. 125 and 187 (Order striking
> complaint for lack of clarity and pleading deficiencies and allowing Plaintiffs to
> re-file complaint). The Court did not order the chart on a whim, but found it to be
> necessary in a case with numerous parties and claims and which involves complex
> areas of civil rights law. The purpose of the chart was to avoid surprises for the
> Court as well as Defendants.

Doc. 333 at 13. Once again, it appears that neither Plaintiffs nor Defendants have taken

to heart the Court's purpose in requiring Plaintiffs to present an accurate and clear

statement of their claims. After they were given a second chance to correct the pleading

deficiencies in the complaint, Plaintiffs filed a Second Amended Complaint (Doc. 140),

which consisted of 78 pages and 472 allegations. Subsequently, the Court gave

Plaintiffs' counsel a "third opportunity to get it right," giving explicit and detailed

instructions in reviewing the Court's own spreadsheet:

> This case is confusing enough due to the number of parties, claims and the
> various types of state and federal claims alleged. This Court is already
> overburdened by an enormous case load, driven in part by border-related cases,
> and it cannot manage this case sufficiently with constant interruptions that have
> nothing to do with the merits of Plaintiffs' claims. My staff has already expended
> a substantial portion of time piecing together a spreadsheet showing all of the
> parties and claims and attempting to reconcile (unsuccessfully) the numerous
> assertions in the Second Amended Complaint with the demonstrative charts
> included in the pleading. This had to be done because it was clear that the
> pleading which was supposed to clarify the claims and parties still could not be
> relied on to be an accurate portrayal of the Plaintiffs and their respective claims.
> The end result is a spreadsheet generated by the Court, and which is attached as
> "Court's Exhibit 1," and depicts a complete representation of the claims being
> asserted by the different Plaintiffs against the different Defendants. The exhibit
> constitutes what the Court understands the parties and claims to be at this point,

including the findings contained in this Memorandum Opinion and Order. Doc. 187 at 7. Plaintiffs responded to the Court's Order and attached an updated claims chart to the pleading. Doc. 193 & 193-1. The Third Amended Complaint, with the claims chart attached as Exhibit 1, was subsequently filed. Doc. 193 & 193-1.

According to the claims chart which now represents the current status of the claims asserted by Plaintiffs against Defendants, Plaintiff G.T. does not assert any Fourth Amendment unlawful seizure claim in Count 9 asserted against the School Defendants, even though both parties include arguments concerning this claim in the briefs underlying the instant motion. The claims chart shows blank squares corresponding to both the Board of Education and Devanna Ortega under the unlawful seizure claim. On the opposite end of the spectrum, Defendants assume that Plaintiff has waived claims of procedural due process in Count 6 against the School Defendants, but according to the claims chart, Plaintiff has *not* waived these claims: there are darkened squares with the number "6" corresponding to both the Board of Education and Devanna Ortega on the chart. However, there are *no* procedural due process claims in Count 6 asserted against Defendant Bryan Martinez (a blank square for the Count 6 box corresponding to Bryan Martinez), even though Plaintiff seems to think this claim has been alleged. *See* Doc. 279 at 13.

It was as simple as reading a chart, which, incredulously, parties have failed to do more than once throughout the filing of multiple motions in this case. While the parties may be tempted to argue that if both sides argue on a theory, the Court should consider the argument, the Court would respond that this practice would not hold for all inconsistencies. For example, only Plaintiff includes a procedural due process argument against Defendant Bryan Martinez, and only Defendant thinks that Plaintiff has waived a procedural due process claim against the

School Defendants. One reason for adhering to the representation of claims on this chart is because the Court has spent too much time and effort requiring the parties to clarify the numerous issues in this case simply to pretend that the chart does not exist. The reason for the claims chart in the first place was to avoid exactly the kind of issues that have arisen here. The best reason however, to follow the claims chart is because the parties were on notice that the chart "constitutes what the Court understands the parties and claims to be at this point." Doc. 187 at 7. If a claim is not asserted in the chart, the Court understands it as waived.

Tthe Court finds that Plaintiff has waived any claim of Fourth Amendment unlawful seizure against Defendants because it is not listed on the claims chart attached to the Third Amended Complaint. Defendants claim that the Court has dismissed Plaintiffs' claim of breach of contract claim in Count 2 and for equitable damages under the New Mexico Constitution in Count 5. However, according to the claims chart, Plaintiff G.T. does not assert a breach of contract claim against the School Defendants. In a previous Memorandum Opinion and Order, the Court dismissed claims for equitable relief under the state constitution which were asserted by other Plaintiffs. *See* Doc. 334. The Court also stated that the state constitutional claims for all Plaintiffs would be dismissed where the federal constitutional claims were dismissed. *Id.* at 7 (finding that Plaintiffs failed to show that the state constitutional claims in Count 5 afford greater protection than what is provided in the federal constitutional claims).

Therefore, based on the Third Amended Complaint and the attached claims chart, Plaintiff G.T. asserts the following claims against the School Defendants ("Defendants" hereinafter):

- Count 3: Negligence under the New Mexico Tort Claims Act asserted against the Board of Education;
- Count 6: Fourteenth Amendment Procedural Due Process asserted against the

>Española School District Board of Education ("Board of Education") and
>Española High School Assistant Principal Devanna Ortega;
>
>- Count 7: Fourteenth Amendment Substantive Due Process asserted against the Board of Education and Defendant Devanna Ortega; and
>
>- Count 12: § 1983 municipal liability claim brought under *Monell*.[1]

Defendants do not offer any argument for dismissal of the negligence claim asserted against the Board of Education, and thus the Court does not offer any reason as to why it should be dismissed. This leaves the Court to address only whether Counts 6, 7 and 12 should be dismissed.

## II. Procedural Due Process

A plaintiff must allege a deprivation of a sufficient property or liberty interest to invoke the protection of the Due Process. *Board of Regents v. Roth*, 408 U.S. 564, 569 70 (1972). If a sufficient property interest is found, the government cannot deprive an individual of that interest without due process. *Gillian v. Schillinger*, 872 F.2d 935, 939 (10th Cir.1989). Due process requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest. *Miller v. Campbell County*, 945 F.2d 348, 353 (10th Cir.1991) (quotation omitted), cert. denied, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992). In the context of school suspension and discipline, an informal hearing is required before suspension of students from public school for 10 days or less. *Goss v. Lopez,* 419 U.S. 565 (1975). Longer suspensions or expulsions may require more formal procedures. *Id.* at 584.

Plaintiff G.T. admits that she was not suspended after she fought with a fellow student at school. Doc. 196, ¶ 149. Thus, the basis for Plaintiff's procedural due process claim remains a mystery to the Court. Plaintiff claims that Defendants Ortega and the School Board violated her

---

[1] *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

procedural due process rights in connection with her IDEA (Individuals with Disabilities Education Act) "manifestation hearing." Doc. 279 at 13. According to the complaint, at that hearing, it was determined that the school had failed to follow G.T.'s BIP and that the incident was due to G.T.'s disability. Doc. 196, ¶ 150.

In the response, Plaintiff contends that she is entitled to more due process than other students because she is a special education student, and seems to contend that she "should be allowed to conduct discovery to determine [sic] the exact reason for her hospitalization, arrest by law enforcement and incarceration as to her procedural remedies, and an explanation as to how this situation arose and was dealt with by School Administrators." Doc. 279 at13.

The Court understands that pushing the boundaries of law is sometimes necessary and appropriate. However, in this case Plaintiff was not entitled to any notice or opportunity to be heard because there was no underlying property right which triggered such a right. Plaintiff G.T. was not disciplined, suspended or expelled. Her BIP was not followed, and for that she was afforded a special "manifestation hearing." Plaintiff contends she is entitled to special due process because of her status as a special education student, but that is exactly what she *did* receive in the form of a "manifestation hearing." This hearing perhaps may have been required under federal statute (e.g., the IDEA), but it was not required under the Fourteenth Amendment's procedural protections.

Under the *Iqbal-Twombly* standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Iqbal,* 556 U.S. at 662. Plaintiff may have unresolved questions concerning the circumstances of her temporary removal from the school grounds, or how the administration handled the situation, but these questions do not form the basis for a Fourteenth Amendment procedural due process claim. Defendants are

9

entitled to dismissal of this claim.

### III. Substantive Due Process

The Court has previously undertaken a detailed analysis of other Plaintiffs' substantive due process claims asserted against the School Defendants, and sees no need to reiterate the applicable, and clearly established law set forth in the Court's other Memorandum Opinion and Orders.  *See, e.g.,* Docs. 330, 330, 335.   Plaintiff G.T. asserts a Fourteenth Amendment substantive due process claim under a danger-creation theory only.

A.   Law on Substantive Due Process

As the Court has previously noted, state actors such as Defendants here are liable only for their own acts, and not for the violent acts of third parties. *See  Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).   There are two exceptions to this general rule, one of which is the "danger creation" theory." Under this theory, a state may be liable for an individual's safety "if it created the danger that harmed the individual." *Id*. (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)); *DeShaney,* 489 U.S. at 199-200.   The creation of danger cannot be premised on compulsory education laws.  Such laws "do not alter the fact that parents retain ultimate responsibility for their child's food, shelter, clothing, medical care, and reasonable safety." *Maldonado v. Josey*, 975 F.2d 727, 732-33 (10th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993).  Because the affirmative duty to ensure a child's safety belongs to the parents, mere "inaction by the state, in the face of a known danger, is not enough to trigger a constitutional duty to protect unless the state has a custodial or other 'special relationship' with the victim." *Armijo  by and Through Chavez v. Wagon Mound Public Schools,* 159 F.3d 1532, 1261 (10th Cir. 1998) ("*Wagon Mound*").

Under a "danger-creation" theory, a plaintiff must show all of the following: (1) her

membership in a limited and specifically definable group; (2) a defendant's conduct which put her at substantial risk of serious, immediate and proximate harm; (3) that the risk was obvious or known; (4) that the defendant acted recklessly in conscious disregard of that risk; and that (5) such conduct, when viewed in total, was truly conscience-shocking. *Wagon Mound*, 159 F.3d at 1262-63 (citing *Uhlrig*, 64 F.3d at 572, and DeShaney, 489 U.S. at 201).

The Tenth Circuit has held that a school's alleged failure to take action designed to ensure the student's safety "in the face of known dangers" does not create a basis for liability under the danger creation theory. *Graham v. Independent School Dist. No. I-89*, 22 F.3d 991 (10th Cir. 1994). Even the foreseeability of harm cannot create an affirmative duty to protect without the existence of a custodial relationship, or without an affirmative act on the part of the school officials putting the student in danger. *Id*. at 994. The Tenth Circuit recently reaffirmed its holdings in *Graham* in the case of *Gray v. University of Colorado Hosp. Authority*, 672 F.3d 909, 916 (10th Cir. 2012). Thus, in order to sufficiently allege that Defendants violated her substantive due process rights, Plaintiff G.T. must, inter alia, allege facts consistent with affirmative conduct taken by Defendants that put her in danger.

A good example of a factual scenario which supports a viable danger-creation theory claim can be found in the Tenth Circuit case, *Wagon Mound,* 159 F.3d at 1262-63. In that case, a special education student at a public school committed suicide after being suspended and driven home without parental notification. The court stated that the "key" to the state-created danger cases

> lies in the state actors' culpable knowledge and conduct in *affirmatively placing* an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for

the third party's [acts] to occur.

*Wagon Mound,* 159 F.3d at 1263 (emphasis added).

B. Analysis

Plaintiff G.T. contends that her substantive due process claims against Defendants (specifically, Assistant Principal Devanna Ortega and the School Board) arose after G.T. was in an altercation and physical fight with another student. As described in the facts set forth above, Defendant John Doe allegedly used unnecessary and cruel techniques in restraining G.T. and carrying her to the teen center.[2] Defendant Ortega then instructed Defendant Police Officer Bryan Martinez to arrest G.T. Plaintiff was taken to the hospital without her parents' notification or permission, and then be incarcerated overnight. Plaintiff G.T. contends that these acts constitute failures to protect her from third parties, such as the student fighting with her or the law enforcement officer who arrested her, thereby violating her protected liberty and property interests, including bodily integrity.

Plaintiff represents that the alleged conduct occurred after the fight started with the other student, Doc. 279 at 16, suggesting that the substantive due process claim applies to Defendants' conduct after the fight started. However, Plaintiff also contends that Defendants' conduct are "failures to protect [G.T.] from third parties, like the student fighting with her. . . ." Doc. 267 at 16. The Court agrees with Defendants that this ambiguity makes it difficult to pinpoint the basis for Plaintiff G.T.'s substantive due process claim. However, neither basis is adequately alleged as a substantive due process claim.

*1. Prevention of the Fight*

---

[2] Contrary to Plaintiff's assertion that the school guards were acting as agents for the school, the Court has previously ruled that the school security guards are *not* agents for the school, and were not acting under color of law for purposes of asserting § 1983 claims. *See* Docs. 324 and 325.

12

It is not entirely clear exactly what conduct on the part of Principal Ortega is alleged to have violated Plaintiff's substantive due process rights.  Plaintiff's claim against Principal Ortega appears to be based on the failure to prevent school violence, and in G.T.'s case, a failure to follow the BIP that was in place to address such behavioral incidents.  Plaintiff alleges, for example, that school administrators failed to act despite "actual knowledge of the extent of the violence at Española secondary schools" (Doc. 196, ¶ 368).  The Third Amended Complaint also states:  that Defendant Ortega has targeted Plaintiff and has told her parents "We're not here to baby her" (Doc. 196, ¶ 154); that security guards make comments about G.T. such as "We can't touch her.  She has a lawyer" (¶ 153); that Plaintiff's caseworker implies that G.T. "is stupid" and tells her "I'm tired of having to bend over backward for you just because you have a lawyer" (¶ 155).  Plaintiff also asserts that the security guards as well as school administrators are not trained in how to follow Plaintiff's BIP (¶ 156).

At its most plausible, Plaintiff appears to allege that Principal Ortega's failure to have staff trained in implementing Plaintiff G.T.'s BIP would prevent altercations such as the one that occurred, and would protect her bodily integrity.  The same claim against the School Board is even more nebulous because Plaintiff does not describe any specific action or decision by any individual Board member, or Board quorum relating to training or following Plaintiff's BIP.  Rather, the allegations in the Third Amended Complaint includes allegations that describe omissions or a failure to act, for example: that the School Board has taken "no efforts to stop the . . . violence and have implemented no measures to ensure the future safety and well-being of Plaintiffs . . ." (¶365); that the School Board is "aware that the [school security guards] are not trained in the BIP plans of disabled students" and are "deliberately indifferent to the physical safety and constitutional rights of G.T., and other similarly situated students" (¶¶156, 157).

13

However, a failure to train or follow a BIP, or to take measures to address violence in schools does not constitute a substantive due process claim. This conduct is not the kind of "affirmative action" placing an individual at a "substantial risk of harm" that is envisioned under a danger-creation theory, and it certainly is not "truly conscience-shocking." A comparison with the facts in *Wagon Mound* is instructive. In that case, the school defendants: (1) suspended the student/plaintiff from school, which caused him to become distraught and to threaten violence; (2) drove the suicidal student to his home; and (3) left him alone with access to firearms. The alleged facts in the instant case, regardless of how they are framed in the complaint, are not sufficient to raise inferences suggesting that either Principal Ortega or the School Board affirmatively placed Plaintiff G.T. in danger.

    2.    *Conduct Arising After the Fight*

If the alleged conduct is premised on what happened to Plaintiff after the fight started, the only "affirmative action" that was taken is arguably Principal Ortega's insistence that Officer Bryan Martinez arrest Plaintiff G.T. There are certainly no allegations connecting the School Board with the alleged restraint and arrest of Plaintiff.

However, Plaintiff does not sufficiently allege a claim based on the danger-creation theory on the facts relating to her restraint and arrest. While Plaintiff has asserted an unlawful seizure claim against Officer Martinez, there are no allegations which touch on the fight itself to suggest how the seizure was illegal. There are no allegations that the "risk" was obvious or known (without guidance from the facts alleged in the complaint, the Court can only assume construe the "risk" to mean excessive force by security guard John Doe and arrest without probable cause by Officer Martinez); or that Principal Ortega acted recklessly in conscious disregard of that risk. Further, the Court's analysis now has the benefit of its recent ruling

14

dismissing Plaintiff's Fourth Amendment claims of unlawful arrest and excessive force against Officer Martinez.[3]  Thus, inasmuch as the alleged conduct against Defendant Ortega is based on the restraint and seizure of Plaintiff G.T., Plaintiff's substantive due process claims against Defendant Ortega and the School Board do not meet the *Iqbal-Twombly* standard, and must be dismissed.

## IV.   *Monell* Claims

The Court has determined that Plaintiff G.T. as not asserted constitutional claims against Defendants under the Rule 12(b)(6) standard set forth under *Iqbal-Twombly*.   Therefore, Plaintiff's municipal liability claims must be dismissed as well.  *See Butler v. City of Prairie Village,* 172 F.3d 736, 747 (10th Cir. 1999) (municipal liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation); *Wilson v. Meeks,* 98 F.3d 1247, 1255 (10th Cir.1996) (quotation omitted) (A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.).

Finally, for the sake of thoroughness, the Court notes that Defendant refers to a "supervisory liability theory" (Doc. 297 at 1), but it does not appear that Plaintiff G.T., or any other Plaintiff, has asserted this claim.  First, supervisory liability claims are asserted against an individual for failing to adopt or implement policy or training of subordinates to prevent deprivations of constitutional rights.  *See Sutton v. Utah State Sch. for the Deaf and Blind,* 173 F.3d 1226 (10th Cir. 1999); *see also* Doc. 335 at 10.   No such claim is asserted against any individual listed on the claims chart.  *See* Doc. 196-1.    To the extent it is erroneously subsumed under a *Monell* claim, that claim would be dismissed as well, for the various reasons addressed in

---

[3] In the Court Memorandum Opinion and Order (Doc. 338), Defendant Martinez' name was incorrectly spelled as "Brian" in Defendants' motion.  Based on the spelling in the complaint as well as in Plaintiffs' pleadings, the name should be spelled "Bryan," and the Court corrects it here.

the Court's previous Memorandum Opinion and Orders.  See Doc. 330 at 15 n.7; Doc. 333 at 14–16; Doc. 335 at 10-11.

## CONCLUSION

In sum, I find and conclude that Plaintiff G.T.'s claims asserted against the School Defendants are limited to those listed in the claims chart attached to the Third Amended Complaint (Doc. 196-1).

I also find and conclude that the School Defendants are entitled to dismissal under Rule 12(b)(6) on Count 6 (Fourteenth Amendment procedural due process), Count 7 (Fourteenth Amendment substantive due process); and Count 12 (*Monell*).

Further, the Court makes no findings on the other claim asserted against the School Board in Count 3 (negligence under the New Mexico Tort Claims Act), because Defendants have not included this claim in the arguments contained in their brief.

**THEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss the Third Amended Complaint Filed by Plaintiff G.T. filed by the School Defendants **(Doc. 243)** is hereby GRANTED, as described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE