**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al.,

Plaintiffs,

v. No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING SCHOOL DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT FILED BY PLAINTIFF R.P.**

THIS MATTER comes before the Court upon a Motion to Dismiss the Third Amended Complaint filed by Plaintiff R.P., filed on April 20, 2012 **(Doc. 244)** by Defendants Española Public School District Board of Education, Dorothy Sanchez, Devanna Ortega, Lewis Johnson, and Dennis Gallegos ("School Defendants," or "Defendants" for purposes of this Order)). Having reviewed the parties' briefs and applicable law, I find that Defendants' motion is well-taken and shall be granted.

**BACKGROUND**

Plaintiffs are students who were enrolled at either Española Valley High School or Carlos Vigil Middle School in northern-central New Mexico. The Third Amended Complaint (Doc. 196), brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract and breach of implied contract, and violations of various rights under the New Mexico and United States

Constitutions. Plaintiffs allege that the school administration is apathetic about school safety, and that Defendants have created a dangerous environment for students, and have taken little or no action to prevent attacks on students by other students. The instant motion seeks to dismiss certain claims that are alleged against the School Defendants.

**I. Alleged Facts Relevant to Plaintiff R.P.**

R.P. is the child of Bernadette Gallegos. He began school at Carlos Vigil Middle School when he was thirteen years old. R.P. is a timid child, who quickly became the target of bullies. Students would push R.P. into one of the bathrooms and then proceed to beat him up. Doc. 196 at ¶¶ 273-277. Security guards allowed students to fight uninterrupted in the school bathrooms. When R.P.'s mother, Bernadette Gallegos, complained to Defendant Assistant Principal Dennis Gallegos about her son being attacked, he told her it was R.P.'s word against his attackers and that he could do nothing. R.P. was then "jumped" in retaliation for his mother's complaints.

R.P. started to get in trouble because staff would find him hiding in different parts of the school when he was scheduled to be in class. R.P.'s father told Defendant Gallegos that R.P. was trying to avoid this gang of students who had attacked him and continued to threaten him. Defendant Assistant Principal Dennis Gallegos told his father to not worry about it because once these kids beat someone up they would move on to another kid. Defendant Gallegos told him, "This isn't grade school. They have to grow up." ¶¶ 279-282.

R.P. began skipping the classes that he shared with the students who had beaten him and were continuing to threaten him. R.P.'s father again went to the school and explained to Defendant Gallegos that his son was only avoiding those classes where he feared for his safety. Defendant Gallegos told him, "I have all these papers to go through. I can't be in the halls to babysit them." Doc. 196, at ¶¶ 278-285. R.P. eventually spent the entire school day hiding from

his abusers. When his mother complained to Defendant Gallegos that R.P. was afraid to go to school, Defendant Gallegos recommended that she get counseling for her son. In the middle of the fall semester, R.P.'s father received a call from the school nurse telling him that R.P. was bruised and battered from being jumped by three students in a bathroom while other students blocked the door to bar security from getting inside. R.P. was suspended along with the three perpetrators. The complaint alleges that R.P. heard that the other students returned to school the next day despite being suspended. Doc. 196, at ¶¶ 286-291.

R.P. returned to school four days later. The same three students cornered R.P. the minute he stepped off the bus. One of the students pulled a knife on R.P. and told him, "We're going to fuck you up." R.P. left the school grounds because he was afraid for his life. ¶ 293. Some family friends saw R.P. walking around Española and notified his father. When his father called the school to ask why no one had informed him that R.P. was not in class, school personnel told him that they thought R.P. was there and had not noticed his absence. When his father told R.P. that he shouldn't have left school because it wasn't safe to be roaming the streets, R.P. told him that he left because he thought those kids were going to stab him. R.P. was attacked five times during the few months he attended Carlos Vigil Middle School. R.P. suffered repeated physical injuries from abuse by other students. Defendant Assistant Principal Gallegos did nothing to stop the abuse. Doc. 196, at ¶¶ 291-298.

R.P.'s parents have since enrolled R.P. in Victory Faith Academy, a small private Christian school in Española, to provide a safe learning environment for their child. R.P.'s parents can barely afford R.P.'s private school tuition. Doc. 196, at ¶¶ 299-300. R.P. has blossomed now that he can learn in a safe and supportive environment, but he continues to suffer insecurity and stress from his traumatic experiences at Carlos Vigil Middle School.

## II. Legal Standard

Plaintiff requests that the Court deny the motion to dismiss, and in the alternative, convert the motion into a summary judgment motion and allow Plaintiff an opportunity to conduct limited discovery pursuant to Fed.R.Civ.P. 56(d). The alternative requested by Plaintiff is denied. The Court has already found Plaintiff's Rule 56(d) affidavit to be deficient. *See* Docs. 326 & 328. In addition, the Court finds there is no need to convert this motion into a summary judgment motion, thereby rendering Plaintiff's alternative request moot.

Defendants raise the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of existing law. *Beedle vs. Wilson*, 422 F.3d 1059 (10th Cir. 2005). This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Id.*

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id.*

**DISCUSSION**

Plaintiff R.P. asserts a claim of negligence under the New Mexico Tort Claims Act against the Española Public School District Board of Education ("Board of Education") in Count 3; a substantive due process claim against the Board of Education and Dennis Gallegos in Count 7; and a *Monell* claim against the Board of Education in Count 12.[1] In the instant motion, Defendants do not address Plaintiff R.P.'s negligence claim, and thus the Court addresses only the substantive due process and *Monell* claims.

**I. Substantive Due Process Claim (Count 7)**

Defendants contend that R.P. fails to state a substantive due process violation based on the danger creation theory.[2]

A. Danger Creation Theory

As the Court has noted in the analyses of the other Plaintiffs' substantive due process claims, state actors such as Defendants here are liable only for their own acts, and not for the violent acts of third parties. *See Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996). .*See,* Docs. 330, 330, 335. There are two exceptions to this general rule, one of which is the "danger creation" theory." Under this theory, a state may be liable for an

---

[1] *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[2] Plaintiff pleads a substantive due process claim based only on a danger creation theory. *See* Doc. 280 at 10.

individual's safety "if it created the danger that harmed the individual." *Id*. (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)); *DeShaney*, 489 U.S. at 199-200. The creation of danger cannot be premised on compulsory education laws. Such laws "do not alter the fact that parents retain ultimate responsibility for their child's food, shelter, clothing, medical care, and reasonable safety." *Maldonado v. Josey*, 975 F.2d 727, 732-33 (10th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993). Because the affirmative duty to ensure a child's safety belongs to the parents, mere "inaction by the state, in the face of a known danger, is not enough to trigger a constitutional duty to protect unless the state has a custodial or other 'special relationship' with the victim." *Armijo by and Through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998) ("*Wagon Mound*").

Under a "danger-creation" theory, a plaintiff must show all of the following: (1) her membership in a limited and specifically definable group; (2) a defendant's conduct which put her at substantial risk of serious, immediate and proximate harm; (3) that the risk was obvious or known; (4) that the defendant acted recklessly in conscious disregard of that risk; and that (5) such conduct, when viewed in total, was truly conscience-shocking. *Wagon Mound*, 159 F.3d at 1262-63 (citing *Uhlrig*, 64 F.3d at 572, and *DeShaney*, 489 U.S. at 201).

The Tenth Circuit has held that a school's alleged failure to take action designed to ensure the student's safety "in the face of known dangers" does not create a basis for liability under the danger creation theory. *Graham v. Independent School Dist. No. I-89*, 22 F.3d 991 (10th Cir. 1994). Even the foreseeability of harm cannot create an affirmative duty to protect without the existence of a custodial relationship, or without an affirmative act on the part of the school officials putting the student in danger. *Id*. at 994. The Tenth Circuit recently reaffirmed its holdings in *Graham* in the case of *Gray v. University of Colorado Hosp. Authority*, 672 F.3d

909, 916 (10th Cir. 2012). Thus, in order to sufficiently allege that Defendants violated her substantive due process rights, Plaintiff R.P. must allege facts consistent with affirmative conduct taken by Defendants that put him in danger.

A good example of a factual scenario which supports a viable danger-creation theory claim can be found in the Tenth Circuit case, *Wagon Mound,* 159 F.3d at 1262-63. In that case, a special education student at a public school committed suicide after being suspended and driven home without parental notification. The court stated that the "key" to the state-created danger cases

> lies in the state actors' culpable knowledge and conduct in *affirmatively placing* an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur.

*Wagon Mound,* 159 F.3d at 1263 (emphasis added).

In this case, Plaintiff alleges that Defendant Gallegos "did nothing to stop the abuse" (Doc. 196, ¶¶ 291-298); he told the parents that "This isn't grade school. They have to grow up" (¶¶ 279-282) and that he "can't be in the halls to babysit them" (¶ 285). Distilled to its essence, Plaintiff's substantive due process claim is premised on facts which indicate that Defendant Gallegos was warned about the assaults on R.P., and had a duty to stop the assaults, but did nothing. However, foreseeability about these assaults "does not create an affirmative duty to protect when a plaintiff remains unable to allege a custodial relationship." *Graham,* 22 F.3d at 995. In this case, there was no custodial relationship. Thus, under clear Tenth Circuit precedent, Plaintiff does not allege facts which form the plausible basis for a substantive due process claim under the *Iqbal-Twombly* standard. Regardless of the warnings Defendants

received from R.P.'s parents about threatened violence from other students, the school officials had no affirmative duty under the Fourteenth Amendment substantive due process clause to protect R.P. from assaults by other students.

The situation here is in stark contrast to *Wagon Mound.* In that case, the school officials took several affirmative actions which led to the case's sad conclusion. They (1) *suspended* the student/plaintiff from school, which caused him to become distraught and to threaten violence; (2) *drove* the suicidal student to his home; and (3) left him alone with access to firearms.

Here, despite the warnings which Plaintiff asserts were given by R.P.'s parents to school officials, the Third Amended Complaint asserts no affirmative act taken either by Assistant Principal Gallegos, by a quorum of Board members, or by individual Board members. Also, notwithstanding Plaintiff's attempts to frame what is essentially a failure to take action as an affirmative act by referring to Defendant Gallegos' inaction as "purposeful decision to take no actions to protect R.P," Doc. 280 at 13, Defendant's Gallegos' conduct still remains as a *failure* or *omission*, and not an affirmative act taken to put R.P. in harm's way. The Tenth Circuit holds that mere "inaction by the state," without the existence of a special relationship, is insufficient to trigger a constitutional duty to protect. *Wagon Mound*, 159 F.3d at 1261.

Accordingly, Defendants are entitled Plaintiff's substantive due process theory. Although the relevant law was clearly established at the time of the alleged incidents, Plaintiff has failed to allege a plausible substantive due process claim under *Iqbal-Twombly,* and this claim (Count 7) shall be dismissed.

B. § 1983 Supervisory Liability

In responding to Defendant's motion on the substantive due process claim, Plaintiff switches gears in arguing that Defendants are liable under a supervisory liability theory. Doc.

280 at 14. Plaintiff relies on *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) to point out than an individual who happens to be a supervisor may be liable for an alleged constitutional deprivation without directly participating in the deprivation. Because Plaintiff does not specify or otherwise describe the factual contours of this claim, the Court can only assume that Plaintiff contends that Defendants are individually liable for the assaults on R.P. by other students under a supervisory liability theory. In *Dodds*, the Tenth Circuit concluded that a basis for supervisory liability theory survives *Iqbal*, specifically, where a defendant-supervisor "creates, promulgates, implements, or . . . possesses responsibility for the continued operation of a policy" that deprives a plaintiff of his constitutional rights. *Dodds*, 614 F.3d at 1199.

Plaintiff's reliance on *Dodds* is misplaced because the plaintiff in that case alleged violations of his substantive due process rights by a state actor (a county sheriff) in refusing to allow him to post bail and detaining him for three days—and not fellow students, who are clearly not state actors.[3] Thus, supervisory liability claims belong to a category of § 1983 claims distinct from Fourteenth Amendment substantive due process claim which R.P. alleges in the Third Amended Complaint, and which seek to make state actors liable for the violent acts of third parties who are not state actors.

Because Plaintiff has mentioned the "supervisory liability" theory in passing in other responsive briefs as well, the Court will not ignore it. First, the Court notes that Plaintiff does not allege any supervisory liability claim anywhere in the Third Amended Complaint with respect to any of the School Defendants. In the claims chart which is an accurate representation

[3] *Iqbal* was a Bivens actions by a pretrial detainee against individual government officials. The question in *Iqbal* involved the level of scienter required for supervisory liability claims, and has no real relevance here. *Dodds* addressed the status of supervisory liability claims brought under § 1983 after the United States Supreme Court decided *Iqbal*, 614 F.3d at 1199, but the Tenth Circuit did not address what state of mind was required to establish the alleged constitutional deprivation under this theory. Instead, the court assumed, without deciding, that deliberate indifference constitutes the required state of mind given *Iqbal's* stricter liability standard. *Id*. However, the appropriate level of intent for such claims has no bearing on the purported claims of supervisory liability in this case because those claims fail for other reasons, as explained in this section.

of all claims and parties (Doc. 196-1), there is not mention at all to "supervisory liability" claims. Therefore, Plaintiff should not be able to raise half-baked theories in response briefs that are not alleged in the complaint.

Second, even if Plaintiff had ventured to allege such claims, those claims would fail. There are no facts which allege that the individual School Defendants had a supervisory position over the other students, which is a requirement to proceed on such theories. *See Dodd*, 614 F.3d at 1195 (supervisor may be liable for conduct of subordinate, although liability is not vicarious and requires some fault on part of supervisor).

Third, supervisory liability claims are based on the allegation of an underlying constitutional deprivation, which would require that the assaults on R.P. by other students in themselves constitute a constitutional deprivation. *See Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) (individual can be liability as a supervisor where that individual "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that . . . caused the complained of *constitutional harm*"). Accordingly, inasmuch as Plaintiff attempts to allege a supervisory liability claim which is not alleged in the Third Amended Complaint, Defendants would be entitled to dismissal on that claim as well, because Plaintiff has not alleged facts which, taken as true, state a claim for relief that is plausible on its face.

## II. *Monell* Claim (Count 12)

It is well-established that a municipality may be held liable under 42 U. S. C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Monell v. Dept of Soc. Servs. of City of N. Y.*, 436 U. S. at 694 (1978); *Barney v. Pulsipher*, 143 F. 3d 1299, 1307 (10th Cir. 1998).

Because Plaintiff has failed to sufficiently allege a constitutional claim against the

Defendants, Plaintiff cannot allege *Monell* claims based on these claims. Further, Plaintiff R.P. does not allege any claims in the Third Amended Complaint against any other state actor which means that Plaintiff may assert no *Monell* claims in this case. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir.1999) (a municipal liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation); *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000)(to establish a *Monell* claim, plaintiff must show an underlying constitutional violation).

In concluding that Plaintiff has not sufficiently alleged a substantive due process claim under *Iqbal* and Twombly (resulting in the dismissal of Plaintiff's *Monell* claim as well), the Court takes the opportunity once again to note the deplorable changes taking place in our public schools (*see* Doc. 330 at 16) and in particular, what appears to be deplorable conditions in the Española public schools, assuming that Plaintiffs' alleged facts are true. Again, the Court concurs with the sentiment expressed by Judge Moore in the Tenth Circuit:

> We are poignantly aware of the seeming transformation of our public schools from institutions of learning into crucibles of disaffection marred by increasing violence from which anguish and despair are often brought to homes across the nation. Yet, defendant school districts neither entered into a custodial relationship with their students, nor did they create or augment the danger posed by the aggressors. Therefore, as the law unquestionably mandates, we affirm the district court's orders dismissing plaintiffs' claims.

*Graham*, 22 F.3d at 992-993.[4]

**CONCLUSION**

In sum, I find and conclude that Plaintiff R.P. has not alleged a plausible claim for a Fourteenth Amendment substantive due process violation under *Iqbal-Twombly*. Plaintiff's *Monell* claim fails based on the failure to allege a viable underlying constitutional deprivation.

[4] The Court also notes that, while Plaintiffs have not been successful on their federal constitutional claims thus far, the Court has not had an opportunity to address Plaintiffs' state law tort claims. Thus, relief for Plaintiffs may be available under theories other than those based on federal law.

Also, to the extent that Plaintiff alleges a supervisory liability theory (although not alleged in the Third Amended Complaint), Defendants are entitled to dismissal on this claim as well because Plaintiff has not alleged facts which survive dismissal under Fed.R.Civ.P. 12(b)(6) and *Iqbal-Twombly*.

**THEREFORE,**

**IT IS ORDERED** that the School Defendants' Motion to Dismiss the Third Amended Complaint filed by Plaintiff R.P.**(Doc. 244)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

UNITED STATES DISTRICT JUDGE