IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Sandra Montoya, on Behalf of her Minor Child,
S.M., et al.,

    Plaintiffs,

v.                                    No. CV 10-651 WPJ/LFG

Española Public School District Board of Education,
et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING SCHOOL DEFENDANTS'
MOTION TO DISMISS THIRD AMENDED COMPLAINT FILED BY PLAINTIFF S.M.
ON PLAINTIFF'S CLAIMS OF FOURTEENTH AMENDMENT SUBSTANTIVE DUE
PROCESS, FOURTH AMENDMENT UNLAWFUL SEIZURE, FIRST AMENDMENT
RETALIAION, *MONELL* CLAIM, and STATE CONSTITUTIONAL CLAIMS;
and
DECLINING TO RU LE ON PLAINTIFF'S NEGLIGENCE CLAIM
UNDER THE NEW MEXICO TORT CLAIMS ACT**

THIS MATTER comes before the Court upon a Motion to Dismiss Third Amended Complaint filed by Plaintiff S.M., filed on April 20, 2012 by Defendants Española Public School District Board of Education, Dorothy Sanchez, Devanna Ortega, Lewis Johnson, and Dennis Gallegos ("School Defendants" or "Defendants") (**Doc. 245**). Having reviewed the parties' briefs and applicable law, I find that Defendants' Motion is well taken and is GRANTED with regard to Plaintiff's Fourteenth Amendment Substantive Due Process claim in Count 7, including claim for injunctive relief; Fourth Amendment unlawful seizure claim in Count 9; First Amendment retaliation claim in Count 11, *Monell* claim in Count 12, and claims for injunctive relief alleging violations of the New Mexico state constitution in Count 5. The Court declines to rule on Plaintiff's negligence claim in Count 3 for reasons stated below.

**BACKGROUND**

Plaintiffs are students who were enrolled at either Española Valley High School or Carlos Vigil Middle School in north-central New Mexico. The Third Amended Complaint (Doc. 196), brought by the students' parents, seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), and alleges negligence, third-party beneficiary claims of breach of contract and breach of implied contract, and violations of various rights under the New Mexico and United States Constitutions. Plaintiffs allege that the school administration is apathetic about school safety, and that Defendants have created a dangerous environment for students, and have taken little or no action to prevent attacks on students by other students.

Plaintiff S.M. alleges the following claims in the Third Amended Complaint: Negligence brought under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1, et seq. ("Tort Claims Act"), asserted in Count 3 against the Española Public School District Board of Education ("Board of Education"); Fourteenth Amendment substantive due process claim in Count 7 asserted against all School Defendants; Fourth Amendment unlawful seizure asserted in Count 9 against all School Defendants; First Amendment retaliation claim asserted in Count 11 against the individual School Defendants; and a municipal liability claim brought under *Monell v. Dept of Soc. Servs. of City of N. Y.*, 436 U. S. at 694 (1978). The School Defendants seek dismissal of these claims.

A.  Facts Relevant to Plaintiff S.M., Third Amended Complaint ("TAC") at ¶¶ 35-67

The facts concerning Plaintiff S.M. are related to confiscation of a cell phone, although no facts are given with respect to whether the cell phone belonged to Plaintiff, or whether she was hiding it for someone else.

Plaintiff is a 13 year-old-female student who alleges that in January 2010, Eva Herrera, secretary to the school counselor and Defendant Geraldine Martinez entered her math class and removed her from class. Martinez and Herrera escorted Plaintiff to a bathroom where Plaintiff was told to remove her bra and shirt. S.M. took off her sweater, but refused to remove more clothing. Martinez and Herrera asked her to take off her shirt four more times, but S.M. refused. Finally, Martinez and Herrera threatened S.M. with a strip search if S.M. did not turn over her cell phone. S.M. then turned over her cell phone. TAC ¶¶ 35-46. S.M. called her mother, Sandra Montoya, after the incident, and Ms. Montoya complained about the incident to school personnel. In addition to alleging claims of unlawful seizure and due process violations, S.M. also alleges retaliation under the First Amendment because she "is now afraid to attend school and is afraid of retaliation from [Herrera and Martinez]." TAC ¶ 57.

In addition to complaining to school personnel, Ms. Montoya also went to the Española Police Department to file a complaint against Eva Herrera and Defendant Geraldine Martinez. A police report was filed, but Plaintiff claims no further steps were taken to resolve the matter "adequately." TAC ¶¶ 50-51.

Ms. Montoya arranged to have her daughter transferred out of Jennifer Lopez' Language Arts classroom when Ms. Lopez told S.M., "You are going to sue? Eva [Herrera] should sue you." The transfer caused S.M.'s schedule to become confused, and Ms. Montoya met with the school counselor, Leona Talachy, to correct her daughter's class schedule. While Ms. Montoya was in the counselor's office, Ms. Talachy called her secretary, Eva Herrera, on speaker phone and told her to make sure S.M. was excused for any absences due to her schedule. Ms. Herrera responded, "I don't want anything to do with that child, but if you tell me so." Ms. Montoya reported Ms. Herrera's statement to Defendant Lewis Johnson, the principal, and Defendant

Dennis Gallegos, the assistant principal, both who failed to take any corrective action.

S.M. claims that she is now is afraid to attend school and is afraid of retaliation from Ms. Herrera and the security guard Defendant Martinez. She is depressed, anxious and feels unsafe at school; suffers from P.T.S.D. as a result of the incident; has severe nightmares resulting in bedwetting. Plaintiff's claims against the School Defendants are premised on allegations that the Defendants took no disciplinary action against either Herrera of Defendant Geraldine Martinez for threatening an unlawful strip search; and that Defendants failed to adequately supervise or discipline the security guards.

B. <u>Legal Standard</u>

Defendants raise the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of existing law. *Beedle vs. Wilson*, 422 F.3d 1059 (10th Cir. 2005). This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Id*.

The Court applies the same standard in evaluating the merits of a motion to dismiss in

qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id.*

Plaintiff requests that the Court deny the motion to dismiss, and in the alternative, convert the motion into a summary judgment motion and allow Plaintiff an opportunity to conduct limited discovery pursuant to Fed.R.Civ.P. 56(d). The alternative requested by Plaintiff is denied. The Court has already found Plaintiff's Rule 56(d) affidavit to be deficient. *See* Docs. 326 & 328. In addition, the Court finds there is no need to convert this motion into a summary judgment motion, thereby rendering Plaintiff's alternative request moot.

## DISCUSSION

The School Defendants seek dismissal of all claims asserted against them by Plaintiff S.M. Defendants filed a separate motion regarding the state constitution claims in Count 5 (Doc. 249), on which the Court has already ruled. In that Memorandum Opinion and Order, the Court ruled that the state constitutional claims for all Plaintiffs would be dismissed where the federal constitutional claims were dismissed. Doc. 334 at 7 (finding that Plaintiffs failed to show that the state constitutional claims in Count 5 afford greater protection than what is provided in the federal constitutional claims). Therefore, Plaintiff's claims of violations of the New Mexico state constitution will be dismissed on the condition that Plaintiff's federal claims

are dismissed.

I.    **Fourteenth Amendment Substantive Due Process**

In Count 7 of the TAC, Plaintiff S.M. alleges a § 1983 substantive due process claim, based on a danger creation theory only. *See* Doc. 281 at 13.[1] To succeed on a "danger creation" theory, a plaintiff must establish: (1) the school district and its agents created or exacerbated the danger, (2) that she was a member of a limited, specifically defined group, (3) that a defendant's conduct put plaintiff at a substantial risk of serious, immediate, and proximate harm, (4) the risk was known and obvious, (5) the defendants actions were reckless, in conscious disregard of the risk, and (6) the conduct alleged shocks the conscience. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008).

Plaintiff is not specific about what factual allegations form the basis for her substantive due process claim against the School Defendants, since neither school secretary Ms. Herrera nor security guard Ms. Martinez are School Defendants, nor does the response brief provide much insight. The substantive due process claim does not appear to be based on the alleged bathroom incident and alleged wrongdoing of Ms. Herrera and Ms. Martinez.[2] Even if the threat of strip search were addressed under the Fourteenth Amendment, the allegations associated with this

---

[1] As the Court has previously noted, compulsory education laws do not provide a basis for a special relationship theory. *See, e.g.,* Docs. 333 at 10; 340 at 6. In *O'Hayre v. Bd. of Educ. for Jefferson Cty Sch. Dist. R-1,* 109 F.Supp.2d 1284 (D.Colo., 2000), the court determined that a high school principal's placement of a student in lunchtime detention was not a restraint of liberty sufficient to give rise to special relationship, for purpose of determining whether school's failure to protect student from assault by principal violated student's due process rights. Here, S.M. correctly does not claim that the few minutes she spent during the bathroom incident constituted a "detention" which would have created a custodial or special relationship.

[2] Since Plaintiff is alleging a Fourth Amendment unlawful search claim based on the bathroom incident, the Court notes that Plaintiff would have been precluded from asserting a substantive due process claim on that incident as well. *See U.S. v. Lanier,* 520 U.S. 259, n.7 (1997) (substantive due process analysis is inappropriate if the claim is "covered by" the Fourth Amendment).

incident do not meet the elements of a substantive due process claim brought under a danger creation theory. Removing a student from class and threatening a strip search in order to get the student to turn over her cell phone does not involve a substantial risk of serious and immediate harm, and it certainly is not conscience-shocking. *Cmp., e.g., Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443 (5th Cir. 1994) (seduction of 15 year-old female student that began with kissing, petting, and undressing, and culminated in repeated acts of sexual intercourse was sufficient to allege a substantive due process claim); *Sh. A ex. rel. R.A. v. Tucumcari Mun. Sch.,* 321 F.3d 1285 (10th Cir. 2003) ("*Tucumcari*") (affirming qualified immunity to defendant on substantive due process violation where a teacher put his hand inside students' shirts to rub their chests and backs and under their shorts, rubbing their legs from mid-thigh almost up to the point where their legs joined their bodies).

    According to the response brief, S.M.'s substantive due process claim seems to be based on the School Defendants' failure to protect S.M. from potential student-on-student violence. TAC, ¶ 362; Doc. 281 at 15 (stating that S.M. is at "immediate risk of being attacked by other students, due to the School Defendants' conduct"). However, other than conclusory statements in the TAC and in Plaintiff's response brief, there are no allegations which offer any details at all about S.M.'s fear of conflict or violence from other students. The paragraphs in the TAC which relate to S.M. essentially describe the following: S.M. was taken to the bathroom in order to retrieve Plaintiff's cell phone; her mother complained to school personnel and the police department, then had S.M. transferred to another class when a teacher made a comment related to Plaintiff's intention to sue Ms. Herrera; Ms. Herrera made a harsh comment about not wanting to deal with S.M.; and S.M. blames the School Defendants for the threatened strip search by the security guard who accompanied Ms. Herrera and Plaintiff into the bathroom. None of these

7

allegations speak to a fear of conflict with, or violence from, other students. Plaintiff S.M. alleges no affirmative act other than Defendant Herrera's comments to Plaintiff to remove her bra and shirt, and this act does not shock the conscience. Plaintiff also asserts that Defendants Johnson and Gallegos "failed to take any corrective action" (¶ 56) after Ms. Montoya reported Ms. Herrera's comments regarding not wanting "anything to do with that child. . . ." This also does not meet any of the elements of a substantive due process claim.

Plaintiff also alleges that the School Board failed to adequately supervise or discipline security guards or school employees to prevent further constitutional violations. Plaintiff does not state such a claim in the chart attached to the Third Amended Complaint, which represents all claims asserted by each Plaintiff against each Defendant. *See* Doc. 196, Ex. 1 (Claims Chart) & Doc. 333 at 13 (noting Court's objective behind giving Plaintiff three opportunities to clarify claims). Even if such claims had been represented on the claims chart, Plaintiff would be precluded from suing the School Defendants based on the conduct of Ms. Martinez. The Court has previously concluded that Big Ross security guards are not state actors for purposes of § 1983. *See* Docs. 324 & 325 (ruling security guards not state actors); Doc. 335 at 10-11 (discussion of supervisory liability claims). Further, having determined that S.M. has not sufficiently alleged a substantive due process claim under a danger creation theory based on the conduct of either Geraldine Martinez or Eva Herrera, any supervisory claim based on their conduct would fail. *See Dodds v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010) (Supervisory liability claims are based on the allegedly unconstitutional conduct of a subordinate).

Therefore, Plaintiff's substantive due process claim is insufficient to withstand dismissal based on the *Iqbal-Twombly* standard, and Defendants are entitled to dismissal of this claim.

8

## II. Fourth Amendment Unlawful Seizure

In Count 9 of the TAC, Plaintiff alleges that her detention "was wrongful, without reasonable suspicion or probable cause," and deprived her of her Fourth Amendment rights.

### A. Relevant Law

With limited exceptions, a search or seizure requires either a warrant or probable cause. *Pacheco v. Hopmeier*, 770 F.Supp.2d 1174, 1182 (D.N.M.,2011). The United States Supreme Court has held that while the Fourth Amendment applies to searches conducted by public school officials on school grounds, the special circumstances of the public school environment justify departure from the probable cause requirement. *See New Jersey v. T.L.O.*, 469 U.S. 325, 333, 341 (1985). *T.L.O.* established that as applied to school administrators, the legality of a search should depend on the reasonableness, under all circumstances, of the search. It established a two-part test: (1) whether the officers initially had justification for the search; and (2) whether the scope of the search was reasonably related to the circumstances that initially justified the interference. *Id.* The Tenth Circuit applies the *T.L.O.* standard not just to searches, but also to seizures by school administrators on school grounds. *Pacheco,* 770 F.Supp.2d at 1183 (citations omitted). Thus, in this Circuit, a seizure made by a school administrator on school grounds must be both (1) initially justified and (2) reasonably related in scope to the circumstances that justified the initial seizure. *Id.*

### B. Allegations in the TAC

The Court notes, along with Defendants, that there are no facts which provide the context in order to determine whether the threatened strip search was justified from the inception. However, additional facts are not needed in order to resolve the question of whether this claim should be dismissed, for two reasons. First, Count 9 does not attribute any acts or omissions to

9

any of the School Defendants, particularly to either Principal Lewis Johnson or Assistant Principal Gallegos. Plaintiff's allegations that Defendants actions were "wrongful" and were done "without reasonable suspicion or probable cause" are conclusory, and therefore insufficient to state a plausible claim under Fed.R.Civ.P. 12(b)(6).

The TAC alleges a failure to take corrective action, or adequately train or supervise security personnel on the rights of public school children. The Court has herein previously addressed the reasons why such claims fail. An alleged failure to take action has no place in a Fourth Amendment unlawful seizure claim; and Plaintiff may not proceed against the School Defendants on a supervisory liability claim for reasons given in the above discussion. Second, regarding the reason for the detention—the threatened strip search—there are no allegations that any School Defendant touched Plaintiff's person or clothing. Therefore, the Court finds that S.M.'s Fourth Amendment claim does not state any facts to support a plausible claim against the School Defendants, for either the alleged detention or seizure.

C.   School Defendants Are Entitled to Qualified Immunity on Fourth Amendment Claim

The decision of the United States Supreme Court in *T.L.O.* was clearly established at the time of the underlying incident involving Plaintiff S.M. A school official is "entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson v. Callahan*, 555 U.S. ——, 129 S.Ct. 808, 822 (2009). To be "clearly established," there is no need that "the very action in question" has previously been held unlawful. *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Tucumcari*, 321 F.3d at 1285 (requiring parties to "make a reasonable application of existing law to their own circumstances) (citing *Johnson v. Martin,* 195 F.3d 1208, 1216 (10th Cir. 1999)). What is required is a "substantial correspondence between the conduct and prior case law). *Hilliard v. City and Cty of Denver,*

930 F.2d 1516, 1518 (10th Cir. 1991).

Plaintiff S.M.'s alleged detention and seizure concerns a threatened strip search and thus the relevant inquiry is whether the law on school strip searches was clearly established at the time of the underlying incidents.  In 2009, around the time in which the incidents occurred, the United States Supreme Court decided that the law regarding strip searches of students was not clearly established.  In *Safford Unified Sch. Dist. No. 1 v. Redding,* 557 U.S. 364 (2009), the Supreme Court addressed the difficulty in establishing the contours of a Fourth Amendment right "in the wide variety of possible school settings. . . ."  The Supreme Court noted a few cases as examples:  *Williams v. Ellington,* 936 F.2d 881, 882-83, 887 (1991) (upholding a strip search of a high school student for a drug, without any suspicion that drugs were hidden next to her body).; *Thomas v. Roberts,* 323 F.3d 950 (11th Cir. 2003) (granting qualified immunity to a teacher and police officer who conducted a group strip search of a fifth grade class when looking for a missing $26).  557 U.S. at 377.  Since the law regarding student strip searches is not clearly established, it is evident that the law regarding *threatened* strip searches is also not clearly established, and as a result, the School Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

### III.     First Amendment Retaliation Claim

Plaintiff alleges a First Amendment claim of retaliation in Count 11 of the TAC. Generally speaking, government action "which chills constitutionally protected speech or expression contravenes the First Amendment.*"  Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). The pertinent legal standard for a First Amendment claim in a non-employment context is set out as follows in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), *cert. denied*, 533 U.S. 916, (2001): (1) plaintiff was engaged in constitutionally protected activity; (2) defendant's

11

actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Worrell,* 219 at 1212.

The Court need not consider whether Plaintiff was engaged in constitutionally protected activity, because there is not a single action taken by Plaintiff that is even suggestive of such activity or speech.   Moreover, none of the allegations in the TAC relative to S.M. form the basis of a First Amendment retaliation claim.   Plaintiff asserts that the School Board and Defendants Johnson, Gallegos, Sanchez and Archuleta "violated Plaintiffs S.M.'s, S.V.'s, S.M.G.'s, and C.G.'s rights under the First Amendment by unreasonably subjecting Plaintiffs to intimidation and retaliation for exercising their right to free speech."  Doc. 196, ¶ 403.

The Court is as confused as Defendants in ascertaining what facts devoted to S.M. are meant to allege a First Amendment claim.   As though attempting to clear up the confusion, Plaintiff's response states that "S.M. has pled a cognizable First Amendment retaliation claim based on the actions. . . taken by the School Defendants in response to complaining multiple times about the threatened strip search."  Doc. 281 at 21.[3]   Plaintiff states that "[i]Individuals possess a constitutional right under the First Amendment of the U.S. Constitution 'to present a criminal complaint, which is a form of the right to petition for redress of grievances, and thus one of the most basic of all constitutional rights.'"  *Meyer v. Harper County*, 482 F.3d 1232, 1243 n. 5 (10th Cir. 2007).   However, this argument does not go far in bolstering a First

---

[3]  Plaintiff assumes, without offering any discussion or argument, that complaints made by S.M.'s mother qualify as "speech" by the daughter.   There may be some basis to consider that a parent's activities on behalf of a minor child could constitute protected activity by the child. *See, e.g. Cain v. Tigard-Tualatin School Dist. 23J*, 262 F.Supp.2d 1120 (D.Or.,2003) (finding that protected speech made by third parties who were parents of minor came under reach of First Amendment based on freedom of association).   However, the parties have not presented the Court with a sufficient development of this issue to allow the Court to make a determination on the issue, and the Court does not intend to do Plaintiff's counsel's work in making this argument.

12

Amendment claim, without the requisite factual allegations.  Plaintiff stops short of actually alleging facts or otherwise explaining what these "actions . . . taken by the School Defendants" in response to these complaints might be.  The only "facts" which might qualify as attempts to allege a First Amendment claim are these:

(1) "Evincing a policy of retaliation for asserting one's constitutional rights, Language Arts teacher Jennifer Lopez told S.M., 'You are going to sue? Eva [Herrera] should sue you.'"  TAC, ¶ 53;

(2) subsequent attempts to accommodate S.M. by transferring her to a different class caused her schedule to become "horribly confused."  TAC, ¶ 54; and

(3) an attempt to ensure that S.M. was excused from any resulting absences prompted Herrera to remark: "I don't want anything to do with that child." TAC, ¶ 55.

The Court fails to see where any of these comments—none of which are made by any of the School Defendants—constitutes an adverse action that would prompt Plaintiff to stop engaging in protected activity, assuming Plaintiff was engaged in such activity. Plaintiff does not explain what she said to Ms. Lopez to prompt Ms. Lopez' remark, but certainly Ms. Lopez is within her own constitutional rights to tell S.M. what she thinks of S.M's plan to sue Ms. Herrera.  Also, Ms. Herrera's remark is not an adverse action and certainly not sufficient to stop the complaints by S.M.'s mother.  Also, the Court has not found any case law which holds that a statement of generic dislike of a person is a retaliatory action.

Even assuming one could consider Ms. Montoya's complaints to the school officials as speech by Plaintiff (and then also assuming that it was constitutionally protected, which the Court need not decide here), the TAC alleges no facts stating that any actions were taken by the School Defendants that infringed on S.M.'s First

13

Amendment rights. S.M. pleads that she is afraid of retaliation from Ms. Herrera and security guard Geraldine Martinez, but Plaintiff S.M. does not plead that she suffered retaliation from any of the School Defendants. Plaintiff may be alleging that the "injury" she suffered is her confused class scheduling as a result of S.M.'s transfer from Ms. Lopez' class, and that Defendants Johnson and Gallegos permitted this purportedly retaliatory act." However, a messy or confusing class schedule simply does not constitute an "injury" under the First Amendment that would chill a person of ordinary firmness from continuing to complain.

Accordingly, the Court finds that Plaintiff S.M. does not allege facts in the TAC which support a plausible claim for a First Amendment violation, and Defendants are entitled to dismissal on this claim as well.

**IV.     *Monell* Claim**

In Count 12, Plaintiff S.M. asserts a *Monell* claim based on violations of her federal constitutional claims. It is well-established that a municipality may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Monell v. Dept of Soc. Servs. of City of N. Y.*, 436 U. S. at 694 (1978); *Barney v. Pulsipher*, 143 F. 3d 1299, 1307 (10th Cir. 1998). Plaintiff has failed to sufficiently allege a constitutional claim against the Defendants, and therefore cannot allege a *Monell* claim based on that claim.

Further, Plaintiff does not allege any claims against any other state actor which essentially precludes Plaintiff from asserting any further *Monell* claims in this case. Because Plaintiff has failed to allege an underlying constitutional claim, his *Monell* claim must also be dismissed. *Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir.1999) (municipal

liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation); *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000) (to establish a *Monell* claim, plaintiff must show an underlying constitutional violation).

**IV.     Negligence Claim Under Tort Claims Act**

Defendants seek dismissal of Plaintiff's negligence claim in Count 3 asserted against the School Board, brought pursuant to the New Mexico Tort Claims Act ("Tort Claims Act"), contending that S.M. has failed to identify a waiver of immunity in NMSA 1978, § 41-4-6.  That section waives governmental immunity for claims of "bodily injury, wrongful death or property damaged caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." NMSA 1978, § 41-4-6.   The waiver in this section applies if the negligent "operation or maintenance" creates a dangerous condition that threatens the general public or a class of users of the facility at issue.  *Espinoza v. Town of Taos*, 120 N.M. 680, 683 (1995). Defendants claim that Plaintiff has failed to identify a waiver of sovereign immunity under the Tort Claims Act because § 41-4-6 does not encompass the type of injuries claimed by Plaintiff. Defendants contend that S.M. does not allege that she suffered a "bodily injury" as required by the plain language of § 41-4-6.

The Tort Claims Act does not specifically define "bodily injury."  Defendants rely on insurance law cases to determine the meaning of the phrase.  *See Holguin v. Tsay Corporation*, 146 N.M. 346 (Ct.App.2009) (analyses in cases interpreting language in insurance contracts can be relevant to issues of sovereign immunity) (citing *Brenneman v. Bd. of Regents of Univ. of N.M.*, 135 N.M. 68 (Ct.App. 2003)).    Based on these cases, Defendants contend that "bodily

injury" should be defined narrowly to argue that emotional distress or psychological injuries do not qualify as a "bodily injury" for purposes of §41-4-6. *Economy Preferred Ins. Co. v. Jia,* 135 N.M. 706 (N.M.App.,2004)  (physical manifestations of child's emotional injury after witnessing his mother's fatal injuries caused by car striking her as pedestrian were not "bodily injury" within the meaning of automobile policy); *Hart v. State Farm Mutual Inc. Co.,* 145 N.M. 18 (Ct.App. 2008) (child's cognitive and emotional harm, and physical manifestations of trauma from sexual abuse committed while inside vehicle, did not constitute bodily injury within meaning of uninsured motorist policy).

Plaintiff disagrees with Defendants' reliance on insurance law to define "bodily injury," but at the same time recognizes that "bodily injury" as used in §41-4-6 is not defined either in the Tort Claims Act or in any case law.    Plaintiff argues that using insurance law to define a term in the Tort Claims Act is inaccurate and imprecise, because the definition of "bodily injury" can vary from policy to policy.    Moreover, Plaintiff insists that she did suffer from "bodily injuries" in the form of "difficulty concentrating at school," feelings of "depression, anxiousness, and continuous feelings of insecurity . . . .") TAC, ¶¶ 57-62.    However, these allegations of physical manifestations fall into the exact category of injuries for which there is no clear answer on whether they constitute "bodily injury" under §41-4-6.    It is true that the scope of § 41-4-6 has been read broadly by New Mexico courts to promote the public safety purpose behind the provision. *See Bober v. N.M. State Fair,* 111 N.M. 644, 653 (1991); *Cobos v. Dona Ana Cty Housing Auth,* 126 N.M. 418 (1998) (expressing disagreement with "narrow and formalistic" interpretations of §41-4-6).    At the same time, the legislature's choice of language in limiting compensable injuries to "bodily injury" leaves unresolved the question before the Court in this case.

However, the Court need not pass on this question. This Memorandum Opinion and Order addresses the last pending motion to dismiss which involves Plaintiffs' federal claims. Given the posture of this lawsuit, the Court does not intend to extend jurisdiction over the remaining state law claims under 28 U.S.C. §1367, and the Court will enter a separate Order to that effect.

## CONCLUSION

In sum, I find and conclude that Plaintiff S.M. does not allege any facts against the School Defendants to form the basis of a plausible claim of a Fourteenth Amendment substantive due process violation in Count 7. Plaintiff alleges no facts which suggested that Defendants' actions put Plaintiff at a substantial risk of serious or immediate harm. Also, Plaintiff's allegations of Defendants' failure to supervise either security guard Geraldine Martinez or school secretary Eva Herrera do not state a claim under either the Fourteenth Amendment or under § 1983.

I also find and conclude that Plaintiff S.M.'s Fourth Amendment claim in Count 9 states no facts which support a plausible claim against the School Defendants under the *Iqbal-Twombly* standard, for either the alleged detention or seizure (threatened strip search). Further, under United States Supreme Court precedent, I find that the law regarding strip searches of students was not clearly established at the time of the underlying incidents, and is not currently clearly established.

I further find and conclude that Plaintiff's First Amendment retaliation claim in Count 11 alleges no injury or adverse action taken by School Defendants, even assuming Plaintiff could meet the other elements in this claim;

I also find and conclude that, with the dismissal of Plaintiff's other federal constitutional

claims, her *Monell* claim in Count 12 must also be dismissed.

Finally, the Court declines to pass on Plaintiff's claim of negligence brought under the Tort Claims Act in Count 3.

**THEREFORE,**

**IT IS ORDERED** that the School Defendants' Motion to Dismiss Third Amended Complaint filed by Plaintiff S.M. (**Doc. 245**) is hereby GRANTED as follows:

- Defendants are entitled to dismissal with prejudice under Fed.R.Civ.P. 12(b)(6) of Plaintiff's Fourteenth Amendment Substantive Due Process claim in Count 7, including claim for injunctive relief;

- Defendants are entitled to dismissal with prejudice of Plaintiff's Fourth Amendment unlawful seizure claim in Count 9;

- Defendants are entitled to dismissal with prejudice First Amendment retaliation claim in Count 11;

- Defendants are entitled to dismissal with prejudice of Plaintiff's *Monell* claim in Count 12; and

- based on the Court's previous ruling on state constitutional claims, Defendants are entitled to dismissal with prejudice of Plaintiff's claims for injunctive relief alleging violations of the New Mexico state constitution in Count 5.

**IT IS FURTHER ORDERED** that the Court will not pass on Plaintiff's negligence claim in Count 3, as the Court does not intend to exercise supplemental jurisdiction over the remaining claims in this case.   A separate Order will be entered to this effect.

_____
UNITED STATES DISTRICT JUDGE